## T. M. CAIN ET AL. v. TEXAS BUILDING AND LOAN ASSOCIATION.

### Decided March 18, 1899.

**1. Building Contract Not a Loan—Usury.**

A written contract between a building and loan association and the owners of real property, in which it agrees to furnish material and erect a building for them, with stipulation for a builder's, mechanic's, and materialman's lien upon the lot and improvements, duly executed under the statute and accompanied by promissory notes to it payable in monthly installments, evidences a builder's contract, and not a loan of money subject to the usury laws. ·

**2. Mechanic's Lien on Lot and Subsequent Building.**

A mechanic's lien attaches not only to the building and lot, but attaches with priority to a building subsequently erected by another upon the lot after the destruction of the first building by fire, where the lienholder has complied with the requirements of the statute giving him a lien on the house or improvements erected by him and on the land necessarily connected therewith. Rev. ·Stats., art. 3294.

**3. Priority of Liens—Estoppel.**

A lienholder who agrees that his lien shall be subject to the lien of another is estopped to dispute the validity and priority of the latter lien.

**4. Same.**

The holder of a mechanic's lien who agrees that his claim shall be subject to that of a building association, and that the latter may extend the time of payment of its claim without prejudice and without notice to him, in consideration of its forebearance to bring suit against the common debtor, is estopped to question the application of money received by the association in settlement of insurance upon the property to the payment of only that part of its debt then past due, the balance of the insurance money being paid over by it to the owner and not applied to the remainder of its debt.

Appeal from Navarro.    Tried below before Hon. L. B. Cobb.

*B. M. McMahan* and *Perkins, Gilbert & Perkins,* for appellants.

*Frost, Neblett & Blanding,* for appellee.

BOOKHOUT, Associate Justice.—This is a suit upon a note and contract executed by T. M. Cain and J. W. Ballew to and with appellee. The note is for the sum of $2000, dated Corsicana, Texas, September 19, 1892, payable in sixty monthly installments of $50 each, the first installment to be paid on the 19th day of October, 1892, and the others monthly thereafter.    Installments not paid at maturity bear interest and provide for 10 per cent attorney's fees.    It recites that it is given for labor and material advanced by appellee for the improvement of the homestead of appellants—their place of business—and was signed by said Cain and Ballew and their wives.    That the contract signed by said Cain and Ballew is in form a builder's or materialman's contract, and is a lien upon lot 1 and parts of lots 2 and 3, in block No. 3, in the town of Emory, Rains County, Texas, as described in appellee's petition.

The other defendants, besides McMahan, are made parties as heirs of the wife of T. M. Cain, who died after the execution of said papers.

B. M. McMahan is a junior mortgagee.    Prayer is for judgment for balance on the note, with attorney's fees, for costs, and for foreclosure of its lien.

All the defendants except McMahan filed a general denial, and a special answer under oath, alleging that T. M. Cain and J. W. Ballew was each a married man and the head of a family, and the necessary allegations showing the property in controversy to have been their business homestead at the time said note and contract were executed, and was so being used.    That appellees never erected any house for any of the defendants, but in truth and fact loaned T. M. Cain and J. W. Ballew $2000 for the purpose of erecting a house on their lot.    That the transaction was a loan of money, which was received by them and partly used in the erection of a house upon said lot, and that less than $2000 was used for said purpose.    That $1000 of the said note was in fact for interest on the $2000 loaned, and for no other consideration.

That prior to the institution of this suit said Cain & Ballew had paid on said note the sum of $2102, as shown by exhibit attached to the answer.    That the note and contract stipulated for a greater rate of interest than 10 per cent on the amount received from said loan company, and that said note, in so far as it exceeded $2000, was and is void, and other necessary allegations of plea of usury in due form.

2.    That they only received $2000 from said association, and that it never built any house for defendants.    That defendants contracted to pay $1000 interest on the $2000 loaned them, payable in monthly installments of $50 each; that they paid said monthly installments from October 19, 1892, to December 21, 1894, as they matured, making $1350.

That on March 5, 1896, they paid fifteen other installments with $2 interest thereon, making $752, all of which payments aggregate $2102. That one-third of each payment was for interest, and plaintiff collected and received it, knowing it was usurious.

B. M. McMahan filed general denial, and answered specially that plaintiff loaned Cain & Ballew $2000, for which the note declared upon was given. That under the contract declared upon the premises were to be kept insured for plaintiff's benefit. That up to December 21, 1894, Cain & Ballew had paid plaintiff $1350 on said note. That about December 28, 1894, said house was destroyed by fire. That at that time the house was insured for $2000, and the policies payable to plaintiff, as its interest might appear. That both of said policies were issued by solvent companies, and that the house was of greater value than the insurance thereon, and that the policies were binding obligations and legal and collectible, and of the value of $2000; that they were subject to the plaintiff's control, and in law its property. That all of the amount due could have been collected, and that plaintiff did collect enough to have paid in full the indebtedness of defendants to plaintiff.

That on July 15, 1895, said McMahan loaned and advanced to said T. M. Cain and J. W. Ballew $2500 in money, building material, and labor, as evidenced by five promissory notes of Cain & Ballew of that date, and for $500 maturing respectively every six months after their date. That said Cain & Ballew executed a contract to McMahan to secure the payment of said five notes, in substance the same as that executed to said loan association, filed as an exhibit to his plea.

That another storehouse was erected with said money, material, and labor so furnished by McMahan on the same lots.

That the lien of McMahan is superior to any lien of plaintiff thereon.

That McMahan, after the destruction by fire of the building, executed and delivered to plaintiff a written agreement, recognizing the priority and superiority of plaintiff's lien over his. That when he did so he knew the insurance policies were outstanding and had not been collected, but that they were collectible, and that plaintiff could collect enough to satisfy its entire claim; and that believing plaintiff would collect said insurance and pay said claim, he executed said obligation.

That if plaintiff has not collected said policies and paid its debts in full, that its action is in fraud of his rights, and by reason of such negligence, carelessness, or fraud, he is entitled to have his lien adjudged superior to that of plaintiff.

That Cain & Ballew have defaulted in the payment of all of said notes, and he has been compelled to institute suit to foreclose his lien on said property, and declares them all due as by the terms of the notes and contract as provided.

Prayer for judgment for his debt, interest, costs, and attorney's fees, foreclosure of his lien, and that it be declared superior to any claim of plaintiff on the said property, and for general relief.

Defendants Lillie Cain and others answered by general denial, and adopted the answer of T. M. Cain et al.

To the cross-bill filed by defendant McMahan, defendants T. M. Cain and J. W. Ballew answered by general denial.

Plaintiff by supplemental petition, in answer to defendants, filed general denial, and pleaded specially:

That if the representations alleged by defendants were made to the effect that the transaction was a loan of money, then the representations, etc., were made by Bradford & Chapman, and not by plaintiff nor any agent authorized to represent it. That Bradford & Chapman were agents of plaintiff only to the extent of receiving applications from parties who desired houses built, and after contracts were made, then to look after and see to the construction of houses, but had no other authority.

That defendants about August or September, 1892, entered into a fraudulent conspiracy with said Bradford & Chapman for the purpose of unlawfully obtaining money from plaintiff.

That plaintiff in good faith acted on the written application sent it by defendants through Bradford & Chapman, and entered into the contract sued upon, and complied with it by building the house and delivering it to defendants.

That by the written contract defendants agreed to pay plaintiff $1150, and executed their note for $3000 as alleged in its petition.

By further supplemental petition in reply to the answer of defendant McMahan, plaintiff filed general denial, and pleaded specially, that it used every means and diligence within its power to realize and collect the insurance of the building, and collected all that could be collected thereof.

That McMahan knew of, consented to, and was a party to the terms of compromise and settlement with insurance companies. That plaintiff collected $752 and applied it to the indebtedness of Cain & Ballew. That the balance of the insurance was collected by Cain & Ballew.

That McMahan expressly waived and surrendered in the said insurance and consented and agreed that plaintiff could collect and apply it to the indebtedness of Cain & Ballew. That McMahan waived his lien and made it inferior to that of plaintiff.

There was a trial by the court without the intervention of a jury and a judgment for appellee against T. M. Cain and J. W. Ballew for its debt and costs, and against all the defendants for a foreclosure of its lien upon the property. There was a judgment in favor of McMahan against T. M. Cain and J. W. Ballew for his debt and costs, and a foreclosure of his lien upon the property. The judgment expressly makes McMahan's lien subject to the lien of appellee. From this judgment McMahan and said Cain & Ballew have prosecuted an appeal to this court.

Appellant's first assignment of error reads: "The court erred in holding that the note and contract sued upon was not a loan of money, but a contract to build a house, and in rendering judgment for the plaintiff for the amount of the note, interest, and attorney's fees, and in foreclosing the lien on the lots described in plaintiff's petition, because the evidence

showed that the transaction was a loan of $2000 (two thousand dollars) payable in sixty monthly installments of $50 each."

The appellee is a corporation, having its principal office and place of business in Corsicana, Navarro County, Texas. It is engaged in the business of building and erecting houses for a consideration.

Bradford & Chapman were the agents of said association at Greenville, Texas. Cain & Ballew, a firm composed of T. M. Cain and J. W. Ballew, owned a business lot in the town of Emory, Rains County, Texas, upon which they desired erected a store house 40 feet wide and 90 feet long. They made a written application to the appellee through its said agents, Bradford & Chapman, in which, after describing the lot upon which they desired the improvement erected, they further stated: "We desire to improve said property in accordance with plans and specifications herewith submitted, which are made part of this application, and being unable to pay cash for improving said premises, we desire you to erect and build the structures and buildings indicated in said plans and specifications, and to furnish all the material and labor necessary therefor. We agree to pay you for said improvements the sum of $1150 in cash, and $3000 in sixty equal monthly installments of $50 each."

The building and loan association accepted this application, and on the 19th day of September, 1892, entered into a written contract with Cain & Ballew and their wives, whereby it agreed among other things to furnish the material and perform the work and erect and furnish a one-story brick building storehouse, 40x90 feet, upon the lot described in said contract, situated in Emory, Rains County, Texas. This contract expressly stipulated for and retained a builder's, mechanic's, and material-man's lien upon said lot and improvements. This instrument was duly signed and acknowledged by all the parties, and was sufficient to create a lien upon the property. The consideration to be paid for said improvement was the same as stated in the application to be paid as therein stated. At the same time the parties, joined by their wives, executed their promissory notes for $3000, payable in monthly installments of $50 each.

On September 24, 1892, the building and loan association entered into a contract with one Sheppard, whereby he agreed to furnish the labor and material to construct the house according to plans and specifications, made a part of said contract, for the sum of $3150. These were the same plans and specifications made a part of the application of Cain & Ballew to the appellee.

Sheppard constructed the house, and on the 14th day of January, 1893, Cain & Ballew accepted the house and executed to Sheppard a receipt therefor, wherein they stated that in September, 1892, they made a contract with appellee to build the house for them, and that appellee had, through its subcontractor Sheppard, built the house, and that it was satisfactory.

Cain & Ballew had on hand at the time the several contracts were made a quantity of brick, and they furnished Sheppard, the subcontractor, the

brick for the house, amounting to $1150. Sheppard credited this sum on the contract, and appellee paid him the balance of $2000 in cash. This $1150 so paid to Sheppard was accepted by appellee in lieu of the cash payment it was to receive from Cain & Ballew.

There was verbal testimony to the effect that there was no contract between the parties, except the one evidenced by these writings.

The contract upon its face evidences a builder's contract and created a lien upon the lot and improvements, and the trial court did not err in so holding. The transaction not being a loan of money it was not usurious. Paddock v. B. and L. Assn., 13 Texas Civ. App., 265.

Appellants under their third assignment of error present the following proposition: "The judgment is void, and contravenes the Constitution and laws of this State to the extent that it attempts to create and foreclose a mechanic's lien on the building erected with money furnished by McMahan subsequent to the destruction of the building erected with money furnished by appellee, for the construction of which appellee furnished neither material nor labor." The house erected by appellee for Cain & Ballew was destroyed by fire on December 28, 1894.

In July, 1895, Cain & Ballew entered into a contract with B. M. McMahan, by the terms of which McMahan contracted to erect a storehouse 60 feet wide by 90 feet long on a certain lot in Emory, Rains County, Texas, therein described by metes and bounds, and which lot includes the lot upon which the former storehouse stood. Cain & Ballew were to pay $2500 for said house, for which they executed their five promissory notes, each dated July 15, 1895, each for $500, payable to the order of B. M. McMahan, the first maturing January 15, 1896, the second July 15, 1896, the third January 15, 1897, the fourth July 15, 1897, and the fifth January 15, 1898. These notes drew interest from date at the rate of 10 per cent per annum and 10 per cent attorney's fees in case of legal proceedings to enforce collection, and if not paid within twenty days after maturity the holder has the option to declare the entire series due.

McMahan caused the house to be erected as specified in his contract, and it was this house that was standing upon the lot at the time appellee brought this suit. McMahan's notes had not been paid and his contract created a builder's lien upon the property.

It is here contended by the appellants that if the appellee had a builder's lien upon the property, that then it attached only to the building erected by appellee, and under the Constitution and laws it did not attach to the building subsequently erected by another, with which appellee was in no way connected, and concerning which it had no contract.

In this contention we do not concur. By the terms of the statute the contractor, upon complying with its requirements, is given a lien on the house or improvements erected by him, and also on the lot or lots of land necessarily connected therewith. Rev. Stats., art. 3294. This lien when so established will continue until discharged or barred by limitation. Upon the destruction of the house or improvement and the erection of another house thereon, such house became a part of the realty and subject

to the lien.   Such lien took priority over a lien secured by a contractor in replacing the destroyed house.   It has been held that a mechanic's lien, when once secured, takes precedence of all claims to the property improved, arising thereafter.   Hotel Co. v. Griffiths, 88 Texas, 575; Implement Co. v. Light Co., 74 Texas, 605.

In this case, after McMahan had secured his lien and erected the second house on the lots, he executed to appellee an instrument reading as follows:

"In consideration that the Texas Building and Loan Association of Corsicana, Texas, forbears at this time bringing suit against Cain & Ballew and myself for foreclosure of its mechanic's lien upon 40x90 feet of lots 1, 2, and 3, in block 3, in Emory, and the further consideration that said association will permit said Cain & Ballew to pay up that part of their indebtedness to it which is now past due, I hereby agree and consent that the claim and lien which I hold against said parties and property shall be and is a second lien and subject to the lien and claim of said association, and I hereby waive and postpone any and all lien or liens that I have or may have upon said lots and the building thereon situated, and give preference and priority of lien to said association to secure the claims of said association against said Cain & Ballew as evidenced by their notes set out in their said mechanic's lien, it being understood that my lien shall be second and subordinate to the claims of said association; and I consent and agree that said association may extend the time of payment of said claim from time to time as they see fit without prejudice to their lien or claim, and without notice to me.

(Signed)     "B. M. McMAHAN.
"Emory, Texas, February 29, 1896."

By the terms of this instrument McMahan agreed and consented that the claim and lien which he held against said property should be and is a second lien and subject to the lien and claim of appellee, and he expressly agreed to waive and postpone any and all lien or liens that he had or may have on said lots or the building situated thereon, and give preference and priority of lien to appellee to secure its claim against Cain & Ballew.   So far as McMahan is concerned, by this agreement he has admitted the validity and priority of appellee's lien upon the lots and improvements and will not now be heard to dispute the same.

Appellants group their fourth, fifth, and sixth assignments of error, and present thereunder the following proposition: "Where mortgaged property or other collateral security is intrusted directly to the creditor, he becomes a bailee, and is liable for injuries to the trust fund growing out of his negligence or malfeasance as such bailee."

In addition to the builder's lien held by the appellee to secure its debt, Cain & Ballew took out insurance upon the building erected by appellee to the amount of $2000, and had the loss, if any, payable to the appellee as its interests might appear, and delivered the policies to appellee.   This insurance was evidenced by two policies, each for $1000 and each in a

different company. In the latter part of December, 1894, the building was destroyed by fire. For some reason the insurance was not paid, and suit was brought against the insurance companies upon the policies. In these suits McMahan was the attorney for Cain & Ballew. On March 3, 1896, while these suits were pending, the claim was compromised by Cain & Ballew, the companies paying 66⅔ cents on the dollar, amounting in the aggregate to $1333.33. At the time of this compromise there was past due appellee from Cain & Ballew, upon said debt, $750. Out of the money paid by the insurance companies appellee was paid $752, and the balance was paid to Cain & Ballew.

The insurance companies were solvent, and the loss was greater than the amount of the policies. McMahan knew a compromise was contemplated by Cain & Ballew, but did not know its terms and did not consent to the compromise. There is no allegation or proof that Cain & Ballew are insolvent. The only party complaining about the application of the insurance money is McMahan. By the terms of the agreement executed by him, only three days before the making of the compromise, McMahan agreed with the appellee that, in consideration of its forbearance at that time in bringing suit against Cain & Ballew and himself for foreclosure of its mechanic's lien upon the property, and the further consideration that said association would permit said Cain & Ballew to pay up that part of their indebtedness to it, which was past due, the claim and lien which he held against said parties should be and is a second lien, etc., and he further consented and agreed that said association might extend the time of payment of its claim from time to time as they see fit, without prejudice to their lien or claim, and without notice to him. At the time of the making of this agreement, Cain & Ballew were in default to the association $750. They were then in a position where suit could be instituted against them by appellee for a foreclosure of its lien. The agreement is made in consideration of appellee forbearing to bring suit, upon Cain & Ballew paying the amount past due. It further authorizes the association to extend the time of payment of its claim without notice to him. If it be admitted that appellants' proposition announces a correct principle of law, which we do not decide, yet under the facts it could not be invoked in this case. The association relied upon McMahan's agreement and did accept the amount past due and did forbear bringing suit.

If all of the insurance had been collected, by the terms of the agreement the appellee was only entitled to so much of the same as would pay that part of the debt of Cain & Ballew which was then past due. It must have been contemplated that the balance of the insurance money would be retained by Cain & Ballew. We think, in the face of this agreement, McMahan is estopped from questioning the application of the money received in settlement of the insurance upon the property.

We have considered the second proposition urged by appellants under their fourth, fifth, and sixth assignments of error, and are of opinion that under the facts appellants are in no position to invoke the same. The third proposition does not announce a correct principle of law.

We do not think there is any merit in appellants' fourth, fifth, and sixth assignments of error, and they are overruled.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.