BRANNON v. LANCASTER BROS. et al.
(No. 11976.)

Court of Civil Appeals of Texas. Fort Worth.
May 19, 1928.

Rehearing Denied June 23, 1928.

1. **Estoppel** ⬅78(1)—Vendor, orally agreeing that well drillers should have lien of like force and priority as lien for price of oil lease, held estopped to deny existence of mechanic's lien.

Vendor, orally agreeing that oil well drillers should have lien of like force and effect and same priority as vendor's lien for price of .oil and gas lease, *held* estopped to deny existence of mechanic's and materialman's lien.

2. **Frauds, statute of** ⬅119(2)—Vendor of oil lease held estopped to deny validity and priority of driller's lien, on ground that his oral promise to pay for drilling was void promise to answer for another's debt (Rev. St. 1925, art. 3995, § 2).

Vendor, agreeing that his lien for price of oil lease should be subject to lien of well driller, *held* estopped to deny validity and priority of latter's lien, on ground that his parol promise to pay for drilling was void, under Rev. St. 1925, art. 3995, § 2, as promise to answer for debt, default, or miscarriage of another.

3. **Contracts** ⬅71(1)—Promise by vendor of oil lease to pay vendee's debt to well drillers held based on sufficient consideration.

Where vendor of oil and gas lease stated that he wished to foreclose lien for trustee to sell lease under trust deed, when representative of corporate vendee stated that other creditors would apply for receivership, and that certain ones had lien or claim for drilling oil well, his promise to pay corporation's debt to such drillers was based on a sufficient consideration.

4. **Mines and minerals** ⬅117—Court may order that land and improvements not removable without loss be sold, and proceeds prorated between mechanic's lienholder and other lienholders.

In suit by holder of mechanic's and .materialman's lien for improvements, such as oil well, which cannot be removed without loss, and other lienholders, court may order that land and improvements be sold, and proceeds prorated between mechanic's lienholder and other lienholders.

5. **Mines and minerals** ⬅117—Amount of acreage subject to mechanic's lien held not limited by statute as to filing and recording (Rev. St. 1925, arts. 5458, 5473, 5476).

Provision of Rev. St. 1925, art. 5476, that materialman's statement or laborer's lien shall be filed and recorded as provided in preceding chapter, does not limit amount of acreage on which lien may be fixed, under article 5458, especially in view of article 5473, giving laborers, mechanics, etc., a lien on whole of land on which improvement is situated or labor performed, or a leasehold interest therein.

Appeal from District Court, Wichita County; W. W. Cook, Judge.

Action by Lancaster Bros., a partnership, and others, against H. N. Brannon and another. Judgment for plaintiffs, and defendant Brannon appeals. Affirmed.

Kay, Akin & Smedley, of Wichita Falls, for appellant.

Cox & Fulton, of Wichita Falls, for appellees.

BUCK, J. Lancaster Bros., a partnership firm composed of John and Roy Lancaster, sued H. N. Brannon and the Helena Oil Corporation, hereinafter called corporation, and for cause of action pleaded: That defendant Brannon sold to the corporation an oil and gas lease on 100 acres of land in Wichita county, for $10,000, $2,500 being the down payment, and the execution of three notes for $2,500 each. That the corporation contracted with plaintiffs to drill a well upon the above-described premises for oil and gas, and put said well upon the pump in case the same was a producer, and·with the understanding and agreement that, if said first well was a producer, and if defendant gave plaintiffs only the one well to be drilled, then the defendant corporation .was to pay plaintiffs the sum of $1.50 a foot for drilling said well; but, if the said defendant gave plaintiffs additional wells to be drilled under said contract and on said premises, that the plaintiffs agreed to drill said wells for $1.25 a foot for all of said wells. That defendant corporation had. plaintiffs to drill only one well. That the well was drilled to a depth of 585 feet, and was a producer, making 7 to 10 barrels a day. Wherefore plaintiffs asked for a judgment against the corporation for $877.50.

Plaintiffs further alleged that on October 12, 1925, and after said debt became due, and in order to secure the payment thereof, the plaintiffs filed with the county clerk of Wichita county their verified mechanic's and materialman's lien statement, as provided by the laws of Texas, wherein the plaintiffs claimed a lien upon the oil and gas leasehold estate covering the described tract of land.

For cause of action against H. N. Brannon, the plaintiffs alleged that Brannon held the three vendor's lien notes against the leasehold interest, and that the debt, or at least a part thereof, was then due; that Brannon was desirous of ·having a well drilled on said property by the plaintiffs, since the value of the leasehold interest was, before the well was drilled, insufficient to secure and pay Brannon's notes; that Brannon, in order to have said well drilled by the plaintiffs, expressly agreed with the corporation that, if it would procure the services of plaintiffs to drill said well, he would waive his first lien on said property to the extent of the

cost of drilling said well, in order that plaintiffs would be assured of the payment for the drilling of same; and that by reason of defendant Brannon's expressly waiving said lien upon said property to the extent alleged, with the anticipation that said well would be a producer of oil, the lien, which was fixed, filed, and recorded as alleged, is a first and prior lien upon said property, and prior to the vendor's lien held by said Brannon.

Plaintiffs alleged that, if they be mistaken as to their having a first and prior lien on said property, then they are. entitled to a lien upon the value of the property in excess of what its value was before they drilled the well, and they allege the drilling of said well enhanced the value of said property $4,000, and that the property was of the said value before the well was drilled, making it worth $8,000 subsequent to the drilling of the well; that, before the plaintiffs drilled said well, there was only one producing well, of two barrels a day, on the property, and that by reason of the premises, plaintiffs were entitled to a first lien upon and to be paid out of one-half of the proceeds received from the sale of the property.

Plaintiffs, in another count, alleged: That defendant Brannon for a valuable consideration promised and agreed with the corporation that he would pay the debt due by it to the plaintiffs for the drilling of said well, and that he would take over said property in lieu of the debt still due him for the purchase price, and that the corporation agreed thereto, and in pursuance of said agreement the said Brannon did take over said property from the corporation burdened with the debt which Brannon assumed and promised and agreed to pay. That at the instance of said Brannon, instead of said corporation assigning said property to Brannon, Brannon stated that he desired to have the record appear that his lien upon said property had been foreclosed by the trustee under the deed of trust from the corporation, securing said debt for the balance of the purchase price of said property. That Brannon desired to take the property in this manner, so that any other creditors of the corporation, other than these plaintiffs, might not thereafter call upon him and assert a lien upon said property. That said Brannon promised and agreed with the corporation that, regardless of whatever amount said property was sold for by the trustee, he would release the corporation as to any deficiency and would assume and pay the debt due the plaintiffs. That, in pursuance of this agreement between Brannon and the corporation, Brannon caused the trustee under the deed of trust to sell said property, and he bought it in; but he has heretofore failed and refused, and still fails and refuses, to pay the debt due the plaintiffs by the

corporation and assumed for a valuable consideration to be paid by said Brannon.

Defendant Brannon answered by way of numerous special exceptions, some of which will be hereinafter discussed, a general denial, and certain special denials. The cause was submitted to a jury upon special issues, which, together with their answers, are hereinafter set out:

(1) Did defendant H. N. Brannon agree to subordinate his lien to plaintiffs' debt for the drilling of the well in question?  Ans. Yes.

(2) Did the defendant H. N. Brannon, for good and sufficient consideration, promise the Helena Oil Corporation that he would pay the plaintiffs' debts?  Ans. Yes.

(3) What was the value of the lease in question immediately before the plaintiffs drilled the well in question upon it?  Ans. $4,000.

(4) What was the value of the lease in question immediately after the well was completed by the plaintiffs?  Ans. $7,500.

Upon this verdict, the trial court rendered judgment for plaintiffs against the defendant Brannon for $877.50, together with interest thereon at. 6 per cent. per annum from January 1, 1926, to June 27, 1927, the date of the judgment, and with 6 per cent. interest on the total sum, to wit, $956.02, from the date of the judgment. The trial court further adjudged and decreed that plaintiffs' mechanic's and materialman's lien as it existed on October 12, 1925, be and the same is hereby foreclosed as a first lien against the defendants H. N. Brannon, the Helena Oil Corporation, and the Sooner Oil Association; the latter company having some claim to the leasehold interest. The court found in the judgment that the Sooner Oil Association purchased the property from the defendant Brannon after the filing of the plaintiffs' lien, and therefore rendered no personal judgment against said defendant. The court further found from the evidence that the corporation became insolvent soon after the filing of this suit, and was insolvent at the time of the judgment, and had no assets in this state, and therefore no personal judgment was rendered against it. From this judgment defendant Brannon has appealed.

### Opinion.

Plaintiffs introduced in evidence the mechanic's and materialman's lien, signed and sworn to by John Lancaster, acting for Lancaster Bros. dated October 12, 1925, and recorded in volume 2, p. 677, County Lien Records, Wichita county, fixing a lien upon the leasehold interest in the described land.

Defendants then introduced their witnesses, J. R. Wilson, who testified that he was attorney for the Helena Oil Corporation for quite a while, and knew about the purchase by it of a lease from H. N. Brannon; that Brannon was in his office and discussed with

him and members of the corporation the matter of drilling a well on the lease; that Brannon said the well then on the lease was producing about ten barrels, and that he wanted another well drilled; that the conversation was between the defendant Brannon, Mr. Levy, then president of the Helena Oil Corporation, who was dead at the time of the trial, a Mr. Nordon, who was acting secretary and manager of the corporation, and Wilson. Wilson further testified:

"That conversation was either about the time that the Helena Oil Corporation bought the property from Brannon, if I recall right—about the time that the first note became due, or 90 days afterwards, or just subsequent to the time that the first note came due, that the discussion was had, about the drilling of the well. The discussion was first had about whom we could get to drill this well up there, and Mr. Brannon recommended the Tedford boys; said that he figured that they were the best. A little later we told him, or Mr. Nordon told him in my presence, that he could not get the Tedford boys, but Mr. Lancaster had been recommended by the Tedford boys to drill that well, and he stated that any one whom the Tedford boys recommended would be satisfactory to him.

"In order to give you the full explanation, the Helena Oil Corporation, at that time, was in stringent financial circumstances. Mr. Nordon had informed Mr. Brannon of the difficulty of paying the debt at that time. I was present at the time that he did this. Mr. Brannon said that he felt sure that, if they drilled at a location that he would select, they would get more production—increase the production materially. The location was made by Mr. Brannon—that is, as to the surface, rather as to where they would drill the well—and Mr. Nordon told him that it would be impossible at this time, that is, to be sure that the payment could be made to the driller, and, in view of his lien on the premises, that they could not get a driller to go out there and drill a well, with his lien standing in the condition it was, and the financial condition existing as it was with the Helena Oil Corporation, and that he could not get any man to go on the premises. Mr. Nordon said this: That, if Mr. Brannon would authorize him, that he could get the Lancaster Bros. to go and drill it at a footage basis. I do not recall what that was, but a reasonable amount, and if he would expressly authorize the drilling of that well by the Lancaster Bros., so that they would be taken care of in event of a foreclosure or a sale of it, why, that he would have the Lancaster Bros. to go upon the premises and drill it.

"Mr. Brannon said that he was so sure that they would get a well at this particular location that he would authorize him to go and tell the Lancaster Bros., to go upon the premises and drill the well, and they could be paid then from the production on the lease; that they could have their lien in equal standing with us [him?]. Mr. Nordon told these boys that to get them to go out there and drill this well. These Lancaster boys went out there and drilled that well. After they got oil, Brannon came out there about collecting his notes—to see me and Nordon about collecting this money

that was due him. With reference to the trade that we made with Brannon about paying his notes—well, Mr. Levy, who was president of the company, died during the time that they were drilling this well, or about the time they finished it, and the condition of the company then—they were going to cease operations entirely and attempt to liquidate. There were some other properties of some value, besides this particular property, and quite a few creditors, more than enough to take up the value of the property. I do not recall just how much this well that these boys drilled made. I know that it was making some oil.

"With reference to what Brannon said about these notes being paid, of course he wanted his notes paid, and he came up there and said that he was going to foreclose it, and I explained to him at the time that, if he did foreclose, that there were two liens, of course, that he would have to take care of—that is, one of them was a lien on an engine out there. He just said that he was going to foreclose the properties, and make it bring what it would, and as for the balance he would sue the company. I told him that, in view of that fact, there weren't very many creditors who were secured, that they had asked me to inform him—that was Mr. Rainwater, and the Oklaunion Bank, and the bank representative—that they would make application for a receivership, to make this distribution of the assets, before he would agree (to release) the company, and not look to the company for additional obligations. In substance, just take the property for the debt; however, he had to make this foreclosure proceeding and protect himself.

"With reference to when it was he said he was going to have a foreclosure procedure, instead of having us just to assign him the property back: Well, in the condition that the company was in, with many debts, it would defeat any claims that they might have, by proper foreclosure; he wanted to cut out all those other creditors.

"With reference to what he said about assuming and agreeing to pay these boys' debts for drilling that well out there, I said: 'Now, since you have authorized these boys to go out there and drill that well, and materially enhanced your lien, that, in foreclosing this, you will have to take care of these boys out there on that lien—you understand that?' He said that was all right; that he did not mind that. He said that he did not mind doing that, but that he would not take care of the one on the engine and the other lien.

"When he was talking about foreclosing, he meant by that taking the property back in that manner, instead of having us to assign it back to him. He then proceeded with his foreclosure, and sold it under that agreement that we had; he bought it in himself."

Appellant urges that, since an oil and gas leasehold interest is held by the Supreme Court of Texas and various Courts of Civil Appeals to be realty, that no lien could be fixed thereon, or waived, unless the contract was in writing. 37 Corpus Juris, p. 333, § 52, says:

"The lien may be waived by express agreement, written or parol, based upon a valuable consideration as by a release to one claiming

an interest in, or junior lien on, the property. The intention to waive the lien, however, must clearly appear from the language of the agreement."

See 25 Cyc. p. 673, § E.

[1] In Stone v. Fairbanks, 53 Vt. 145, it was held that a lien reserved by deed may be waived by parol. Of course, in this case, it is not contended by appellees that Brannon waived generally his vendor's lien, but that he agreed that the appellees should have a lien of like force and effect and of the same priority as the vendor's lien held by him. We are not satisfied that such an agreement, made in parol, would be in violation of the statute.

But, in any event, we think that appellant estopped himself from denying that he did not make this agreement, and that the oral agreement was in violation of the statute. In 25 Cyc. p. 673, § D, it is said:

"Likewise one is estopped to deny the existence of a lien as against another whom he has induced to act to his prejudice."

In Thorn v. Dill, 56 Tex. 145, Thorn purchased a homestead, executing vendor's lien notes for part of the purchase price. Subsequently, by an agreement entered into by his vendor and one Forsythe, his prospective vendee, it was agreed that Forsythe should take up the two notes which Thorn had given to Dill, vendor, and that instead of the same Forsythe should execute to Dill his notes for a like sum, and that such notes should be secured by a lien upon the land sold by verbal sale to Forsythe by Thorn. Then Thorn moved from the property and acquired another homestead. In a subsequent suit it was held that Thorn was estopped from asserting that such written conveyance had not been made by him of the abandoned homestead as would support and raise a vendor's lien. In the opinion, by Associate Justice Stayton, subsequently Chief Justice, it is said:

"It is apparent that, under the evidence, the appellant [Thorn] has no right under the homestead claim set up by him; for there was not only an intention to abandon the land as a homestead, but there was an actual abandonment, and another homestead was acquired and used by him for some time late in the year 1878 until some time in the spring of 1881. It may be true that, as the sale of the land by Thorn to Forsythe was by parol, that technically no vendor's lien existed; but it appears from the evidence that it was agreed, between Thorn, Dill, and Forsythe, that Forsythe should take up the two notes which Thorn had given to Dill, and that instead of the same Forsythe should execute to Dill his notes for a like sum, and that such notes should be secured by a lien upon the land sold by verbal sale to Forsythe by Thorn. Under such facts, Thorn could not be heard to say that such conveyance had not been made by him to Forsythe as would

support and raise even a vendor's lien, he having induced Dill to claim that such a state of facts existed."

[2] In appellant's petition, he pleaded the essential elements of an estoppel, and we believe that the facts testified to sustain this plea, and for this reason the trial court's judgment should not be disturbed. A lienholder who agrees that his lien shall be subject to the lien of another and thereby induces such other to expend labor or money in reliance upon his lien is estopped to deny the validity and priority of such later lien. Cain v. Texas Building & Loan Association, 21 Tex. Civ. App. 61, 51 S. W. 879, affirmed in 93 Tex. 726, no opinion. See Spann v. Cochran & Co., 63 Tex. 240, opinion by Judge Stayton; Bain v. Lovejoy (Tex. Com. App.) 234 S. W. 1096; Republic Supply Co. v. Waggoner (Tex. Civ. App.) 283 S. W. 537, writ of error refused. These authorities are in answer to the contention by appellant that, if Brannon did promise to pay for the drilling, it was a promise to answer for the debt, default, or miscarriage of another, and under section 2 of article 3995, Rev. Civ. Statutes of 1925, such contract must be in writing in order to be binding.

[3] The evidence sustains the allegation that after the well was drilled, and when Brannon was trying to collect his debt, he promised the officers of the Helena Oil Corporation to pay the debt due by it to the appellees. We think this promise was based on a sufficient consideration, when Brannon said that he wanted to foreclose his lien, for the trustee to sell it under the deed of trust, upon Wilson, speaking for the corporation, stating to him that the other creditors would make application for a receivership, and that the Lancaster Bros. had a lien or a claim for drilling the well. Therefore, in order to avoid a long drawn out lawsuit, and the expenses of litigation, including attorney's fees, probably, appellant agreed that he would take care of and pay the debt owing by the corporation to the Lancaster Bros. We think, on this ground, that the judgment should be affirmed.

[4] Nor do we think the trial court erred in foreclosing the mechanic's and materialman's lien of appellees on the well and the land upon which the well had been drilled. Wherever a lien is upon improvements made on land, and the improvements cannot be removed without loss, in a suit by the holder of the mechanic's and materialman's lien and other lienholders, the court may order the land and the improvements to be sold and the proceeds therefrom to be prorated between the holder of the mechanic's and materialman's lien, and the other holders of liens. See Land Mortgage Co. v. Quanah Hotel Co., 89 Tex. 332, 34 S. W. 730, by the Supreme Court; Moore v. Carey Bros. Oil Co., 248 S. W. 470, by this court; same case by Com-

mission of Appeals in 269 S. W. 75, 39 A. L. R. 1247.

[5] Appellant further urges that in any event the trial court erred in foreclosing appellees' lien upon the entire 100 acres of the leasehold held originally by the corporation, and upon which the vendor's lien was foreclosed by appellant. Article 5476 is in part as follows:

"*Proceedings to fix lien.*—The liens herein created shall be fixed and secured and notice thereof shall be given and such liens shall attach and be enforced in the same manner, and the materialman's statement, or the lien of any laborer herein mentioned shall be filed and recorded within the same time and in the same manner as provided for in the preceding chapter."

Under article 5458, pertaining to the fixing of mechanic's liens of contractors and laborers, etc., it is said:

"If this lien is against land in a city, town or village, it shall extend to or into the lot or lots upon which such house, building or improvement is situated, or upon which such labor was performed; and, if the lien is against land in the country, it shall extend to and include fifty acres upon which such house, building or improvements are situated, or upon which such labor has been performed."

It is evident, under this statute, which provides the means and extent of fixing a lien upon the land itself, and not merely a leasehold interest therein, it is further provided that one holding a mechanic's or laborer's, etc., lien may have a lien upon 50 acres of land surrounding the improvements made thereon. We do not think that the reference in article 5476, of provisions in the "preceding chapter" limits the amount of acreage upon which a lien may be fixed, especially in view of article 5473, which provides that laborers and mechanics, etc., shall have a lien on the whole of such land or leasehold interest.

For the reasons given, the judgment is affirmed.