**BLANCO, INC., Plaintiff–Appellee,**

v.

**I. David PORRAS, Individually, and 1st RepublicBank Dallas, N.A., Defendants–Appellants,**

**and**

**Federal Deposit Insurance Corporation, As Receiver of First RepublicBank Dallas, N.A. and NCNB Texas National Bank, Intervenors–Appellants.**

No. 89–1376.

United States Court of Appeals, Fifth Circuit.

April 4, 1990.

As Modified on Denial of Rehearing May 9, 1990.

Jack Pew, Jr., Jackson & Walker, Dallas, Tex., for 1st Republicbank Dallas, N.A., FDIC and NCNB Texas Nat. Bank.

J. Michael Cunningham, Davis W. Lindemood, Brockett, Cunningham & Bates, Midland, Tex., for I. David Porras.

Stephen I. Adler, Leslie Cain, Barron, Graham & Adler, Austin, Tex., for plaintiff-appellee.

Before WILLIAMS, SMITH, and DUHÉ, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Today we are asked to decide whether plaintiff Blanco, Inc. ("Blanco"), has complied with Texas's statutory requirements for the creation of a mechanics' lien, and, if so, whether it therefore is entitled to a money judgment against a rival lienholder that previously had foreclosed upon the subject property and then purchased it at the foreclosure sale. Concluding that Blanco's lien is valid but that Texas law precludes monetary recovery against a purchaser of encumbered property that does not assume payment of any debts secured by it, we affirm in part and reverse and render in part.

I.

On October 12, 1981, Blanco contracted with defendant I. David Porras to clear trees and brush from 785 acres of Porras's 1,845-acre tract of land in Freestone County, Texas, at a price of $360/acre.[1] Shortly thereafter, the parties modified their original agreement to provide that Blanco was to "finish clearing the entire 1,500 acres" and also entered into a separate oral contract whereby Blanco was to perform leveling and "dirt work" at a price of $100/bulldozer-hour.

On October 29, 1982, Blanco's president, Zane Blanton, filed an "affidavit for mechanics' and materialmen's lien" in the records of Freestone County. Blanton's affidavit stated that Blanco was owed $587,795 pursuant to a contract with Porras and therefore claimed a mechanics' lien on that part of Porras's land that it had improved by "clearing, leveling, and performing dirt work." It further described the property to be charged with the lien as

... fifteen hundred (1500) acres of land, being out of and a part of a 2350.427-acre tract of land ... in the County of Freestone, State of Texas.... [b]eing the same land conveyed to I. David Porras

by Deed dated September 29, 1981, of record in Vol. 598, Pages 50 et seq. of the Deed Records of Freestone County, Texas....

Copies of Blanco's written contracts with Porras were attached to Blanton's affidavit and made a part thereof.

Also in October 1982, defendant First RepublicBank Dallas, N.A. ("Republic"), loaned Porras $10 million and secured that loan by obtaining a deed of trust on Porras's Freestone County land. Republic recorded its deed of trust on November 4, 1982, approximately one week after Blanco filed its mechanics' lien.

In 1986, Porras fell behind in his loan payments to Republic and in his contractual payments to Blanco. In response to Porras's default, Republic foreclosed on his land pursuant to its deed of trust and then purchased the property at the foreclosure sale.

Shortly thereafter, Blanco filed suit in Texas state court against Porras and Republic, seeking contractual damages and the right to foreclose on the property pursuant to its mechanics' lien. By agreement of the parties, the heavily fact-based contractual dispute between Blanco and Porras was tried to the jury, while the purely legal controversy between Blanco and Republic was submitted to the court.

After a lengthy trial, the jury found that Porras had breached his agreement with Blanco and assessed damages at $565,000. The court likewise found in Blanco's favor, concluding that Blanco's mechanics' lien complied with the applicable statutory requirements and, because it had been filed first, was superior to Republic's deed of trust as to the 1,500 acres that it purported to cover. Moreover, the court held that Republic was jointly and severally liable with Porras for the full amount of Blanco's contractual damages.

Republic promptly filed a motion for a new trial. While that motion was pending, Republic was declared insolvent by the

---

1. In September 1981, Porras had acquired 2,350 acres of land; he immediately conveyed 505 acres to a third party. Thus, at the time he entered into the contract with Blanco, Porras owned only 1,845 acres.

Comptroller of the Currency. The Federal Deposit Insurance Corporation ("FDIC"), appointed as receiver, intervened in this action and removed it to federal district court, basing jurisdiction upon 12 U.S.C. § 1819. NCNB Texas National Bank, N.A. ("NCNB"), was then named by the FDIC to act as the "bridge bank" to acquire a portion of the assets and liabilities of the failed Republic.[2]

Following removal, the district court denied the Bank's motion for a new trial and, with minor modifications, adopted the state court's judgment as its own.[3] On appeal, Porras challenges only the validity of Blanco's mechanics' lien; the Bank also challenges its liability for money damages.

## II.

We begin by addressing the two major challenges to the validity of Blanco's mechanics' lien raised by Porras and the Bank. In so doing, we are guided by the principle, well established in Texas law, that the mechanics' lien statutes are to be liberally construed in favor of protecting the interests of laborers and materialmen. *See RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985); *First Nat'l Bank v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex.1974); *Hayek v. Western Steel Co.*, 478 S.W.2d 786, 795 (Tex. 1972).

## A.

Relying heavily upon *Jones v. Mid–State Homes, Inc.*, 163 Tex. 229, 356 S.W.2d 923 (1962), and *Perkins Constr. Co. v. Ten–Fifteen Corp.*, 545 S.W.2d 494 (Tex.Civ.App.—San Antonio 1977, no writ), Porras and the

Bank first contend that Blanco's lien is invalid because it does not contain a legally sufficient description of the property upon which the lien is claimed.[4] In *Jones* and *Perkins*, the courts were faced with mechanics' lien affidavits that described the subject property merely as a quantity of acreage out of a larger tract.[5] Concluding that such descriptions, without more, failed to identify the property to be charged with the lien to the exclusion of other parcels within the parent tract, the courts there found the purported mechanics' liens invalid.

To summarize the holdings of *Jones* and *Perkins* is to highlight the critical distinction between those cases and this one. Blanton's affidavit does not merely purport to fix a lien upon an unidentified 1,500 acres out of Porras's 1,845-acre tract; instead, it describes the 1,500 acres as those on which Blanco performed clearing, leveling, and "dirt work."

As the Bank and Porras readily admit, a mechanics' lien affidavit need not contain a metes and bounds survey of the property to be charged with the lien. Instead, a land description is "legally sufficient" within the meaning of section 53.-054(a)(6) if it contains a "nucleus" of information that could "enable a party familiar with the locality to identify the premises intended to be described" with reasonable certainty. *Scholes v. Hughes*, 77 Tex. 482, 14 S.W. 148, 149 (1890).

Here, the evidence established that, prior to Blanco's clearing and leveling operations, Porras's land was densely forested and covered with deep ravines and gullies. Several witnesses familiar with the proper-

---

**2.** Except where it is necessary to distinguish them, the FDIC and NCNB, whose interests are completely aligned in this litigation, are henceforth referred to collectively as the "Bank."

**3.** The district court modified the state court's judgment by ordering a metes and bounds description of the subject property and by incorporating that description in its own judgment.

**4.** Tex.Prop.Code Ann. § 53.054(a)(6) requires that a mechanics' lien affidavit contain "a description, legally sufficient for identification, of the property charged with the lien."

**5.** In *Jones*, the property was described as "[a] certain lot in the Oltorf Addition of Marlin, Falls County Texas ... in Block No. 7 of said addition and being north of Roosevelt Street south of the City of Marlin, and being west of the Sally Dunbar property" and "about 52 by 150 feet in size." 356 S.W.2d at 924. In *Perkins*, the property was described as "[a] 1.988 acre tract out of Tract 1, Castle Hills City Block 109, WOOTLIN SUBDIVISION, Bexar County, Texas." 545 S.W.2d at 500.

ty testified that it was possible to identify those acres that Blanco had cleared and leveled. Blanco's mechanics' lien affidavit thus contains an adequate "nucleus of information" and therefore complies with section 53.054(a)(6).[6]

### B.

■ The Bank and Porras next assert that Blanco's lien is invalid for failure to comply with Tex.Prop.Code Ann. § 53.054(a)(1) in that Blanton's "affidavit for mechanics' and materialmen's lien" is not in fact an affidavit. An affidavit is statutorily defined in Texas as "a statement in writing of a fact or facts signed by the party making it, *sworn to before an officer authorized to administer oaths,* and officially certified to by such officer under his seal of office." Tex.Gov't Code Ann. § 312.011(1) (emphasis added). Thus, an affidavit must contain a notary's statement that the affiant was duly sworn; a mere acknowledgement by a notary that a document was executed for a particular purpose is insufficient. *See, e.g., Sugarland Business Center, Ltd. v. Norman,* 624 S.W.2d 639, 641 (Tex.App.—Houston [14th Dist.] 1981, no writ); *Perkins,* 545 S.W.2d at 498.

■ Blanton's self-styled "affidavit" begins with the words "[b]efore me, the undersigned authority, personally appeared ZANE BLANTON, president of Blanco, Inc., ... who, upon his oath, deposed and stated ..." and concludes with a notary's seal and acknowledgement that the document was executed as the act of Blanco. Although Blanco concedes that the acknowledgement alone is insufficient, it argues that the first sentence of the affidavit qualifies as a notary's statement that Blanton was duly sworn. We agree.

In *Norcross v. Conoco, Inc.,* 720 S.W.2d 627 (Tex.App.—San Antonio 1986, no writ), the court upheld the validity of an affidavit that began "[b]efore me, the undersigned

authority, on this day personally appeared JOHN W. NORCROSS ... and after having been duly sworn, did state.... that said allegations are true and correct," and ended with a notary's seal, acknowledgement, and signature. Explaining that "no particular terminology is required ... to render a document an affidavit" and that "[i]t is the substance and not the form of an affidavit that is important," *id.* at 630, the court rejected Conoco's argument that the affidavit was fatally defective because it did not state that it was "subscribed and sworn to" before a notary public. Here, as in *Norcross,* the affidavit at issue indicates that it was "sworn to before an officer authorized to administer oaths."[7]

In sum, we agree with the district court that Blanco's mechanics' lien complies with the applicable statutory requirements, and therefore we affirm that part of the judgment holding that Blanco's lien is valid and, because of its earlier recordation, is superior to the Bank's deed of trust.

### III.

■ The Bank next asserts that even if Blanco's lien is valid, it can extend to no more than fifty acres of land. While the Bank's position appears at first glance to be supported by the plain language of Tex. Prop.Code Ann. § 53.022(d),[8] we conclude that Texas law in fact entitles Blanco to foreclose upon the entire 1,500 acres claimed in its lien.

Blanco's mechanics' lien was filed in 1982 and thus is governed not by section 53.022(d) (which was codified in 1984), but instead by its predecessor statute, Tex.Rev. Civ.Stat.Ann. art. 5458. *See, e.g., Gevinson v. Stephen–Leedom Carpet Co.,* 368 S.W.2d 700, 703 (Tex.Civ.App.—Dallas 1963, no writ) (validity of statutory lien governed by version of statute in effect at the time the lien was perfected, even if statute later repealed or amended). Unlike section 53.022(d), article 5458 does not ex-

**6.** It is well established under Texas law that so long as the instrument itself contains a sufficient nucleus of description, extrinsic evidence is admissible to explain the descriptive words and to identify the land. *Pickett v. Bishop,* 148 Tex. 207, 223 S.W.2d 222, 224 (1949); *Smith v. Sorelle,* 126 Tex. 353, 87 S.W.2d 703, 705 (1935); *Wilson v. Smith,* 50 Tex. 365, 370 (1878). Accordingly, the district court acted properly in ordering a metes and bounds survey of the land based upon the testimony and exhibits introduced at trial and in incorporating that survey into its judgment.

**7.** Porras and the Bank argue that *Crockett v. Sampson,* 439 S.W.2d 355 (Tex.Civ.App.—Austin 1969, no writ), is to the contrary and squarely controls this case. We disagree. In *Crockett,* the challenged affidavit (which began simply "Sidney Sampson, affiant, makes oath and says ...") contained no indication that it was sworn to before a notary.

**8.** Section 53.022(d) provides that "[a] lien against land not in a city, town, or village extends to *not more than fifty acres* on which the house, building or improvement is situated or on which the labor was performed." (Emphasis added.)

plicitly limit a mechanics' lien on rural land to fifty acres. Instead, it provides, somewhat ambiguously, that "a lien against land in the country shall extend to and include fifty acres upon which such house, building, or improvements are situated, or upon which labor is performed."

When the language of a statute is ambiguous, we must interpret its meaning in light of the underlying legislative intent. In *Guaranty Sav. Loan & Inv. Co. v. Cash*, 99 Tex. 555, 91 S.W. 781, 782 (1906), the court explained that "[t]he leading purpose running through ... [the mechanics' lien] statute is to secure persons furnishing labor or materials in improving land by *a lien upon that into which the labor or material has entered;* i.e. the structures and the land to which they are attached." (Emphasis added.) In light of this statutory purpose, article 5458 cannot plausibly be read to limit the reach of a mechanics' lien on rural land to fifty acres and thereby to leave unprotected the interests of laborers who improve more than that amount of land. Instead, we believe that the statute is better interpreted as allowing mechanics who labor on generally less valuable rural land to obtain a lien on up to an *additional* fifty acres surrounding the improvements they have made.

In addition to furthering the purposes underlying the mechanics' lien statutes, this interpretation of article 5458 is consistent with the only Texas case on point. In *Brannon v. Lancaster Bros.*, 8 S.W.2d 726 (Tex.Civ.App.—Fort Worth 1928, no writ), a mechanic sought to enforce a lien against one hundred acres of an oil and gas leasehold estate. Tex.Rev.Civ.Stat.Ann. art. 5476, the statute governing liens on such estates, provided that "the liens herein created shall be fixed and secured, ... and such liens shall attach and be enforced in the same manner ... as provided for in ... [the chapter governing mechanics' liens]." Defendant Brannon, the holder of a rival vendors' lien, argued that article 5458 limit-

ed the reach of a mechanics' lien on rural land to fifty acres and therefore that article 5476 applied the same limitations to liens on mineral leasehold estates.

The court disagreed, explaining that "one holding a mechanic's or laborer's, etc., lien may have a lien upon 50 acres of land *surrounding the improvements* made thereon. We do not think that the reference in article 5476, of provisions in the ... [chapter governing mechanics' liens] limits the amount of acreage upon which a lien may be fixed...." *Id.* at 730 (emphasis added).

In sum, we conclude that article 5458, the statute in effect at the time Blanco recorded its mechanics' lien, did not limit the reach of such a lien to fifty acres. Blanco thus is entitled to foreclosure on the entire 1,500 acres, with the limitation that its total recovery against the land itself cannot exceed $565,000, the amount of its contractual damages.[9]

## IV.

■ Finally, the Bank contends that even if Blanco is entitled to foreclosure upon the entire 1,500 acres claimed in its lien, it is not entitled to any monetary recovery against the Bank. We agree. In a line of cases tracing back to *Garza v. Hammond*, 39 S.W. 610, 611 (Tex.Civ.App. 1897, writ ref'd), Texas courts uniformly have held that

> [o]ne who purchases land subject to a lien, but who does not assume the payment of the debt secured by it, is not personally liable for such debt, and the only judgment which can be rightfully obtained against him is for a foreclosure of such lien on the property.[10]

Blanco does not argue, and the record contains no evidence suggesting, that the Bank assumed Porras's contractual liabilities when it purchased his encumbered property at the foreclosure sale. Accordingly, the Bank is not personally respon-

**9.** In addition to contractual damages of $565,000, the district court awarded Blanco attorneys' fees of $141,000 (25% of contract damages); Blanco's award thus totaled $706,000. A mechanics' lien, however, merely secures payment for labor and materials and does not extend to attorneys' fees unless the mechanics' lien contract specifically provides for them. *See, e.g., Citizens Co-op Gin v. United States*, 427 F.2d 692, 699 (5th Cir.1970) ("[i]n the absence of such a contract for attorneys' fees the creditor is entitled only to a personal judgment against the debtor since the lien securing the debt does not cover the attorneys' fees"). The mechanics' lien

contract between Blanco and Porras contains no such provision. Accordingly, Blanco is not entitled to recover its attorneys' fees through foreclosure on the subject property. Instead, Blanco must look to Porras individually to collect that portion of its damages.

**10.** *See also Efficient Energy Sys., Inc. v. J. Hoyt Kniveton, Inc.*, 631 S.W.2d 538, 540 (Tex.App.—El Paso 1982, no writ); *Brooks v. Erbar*, 186 S.W.2d 372, 376–77 (Tex.Civ.App.—Eastland 1945, writ ref'd w.o.m.); *City of San Antonio v. Toepperwein*, 104 Tex. 43, 133 S.W. 416, 417 (1911).

sible for Porras's debt to Blanco or for the attorneys' fees incurred by Blanco in seeking to collect on that debt.

We therefore REVERSE and RENDER that portion of the district court's judgment declaring the Bank jointly and severally liable with Porras and hold that the only recovery Blanco may have against the Bank is foreclosure on the subject 1,500 acres. In all other respects, the judgment is AFFIRMED.

## ON PETITIONS FOR REHEARING

PER CURIAM:

We have before us two petitions for rehearing. Plaintiff Blanco, Inc. ("Blanco") contends both that our earlier opinion went beyond the proper scope of the appeal in holding that defendants Federal Deposit Insurance Corporation and NCNB Texas National Bank, N.A. (collectively, the "Bank") were not liable for the attorneys' fees it incurred in suing on its mechanics' lien and that we erred in implying that the lien did not extend to cover pre- and post-judgment interest. The Bank asks us to revisit our earlier determination that the land description in the lien was legally sufficient.

After considering both petitions, we have concluded that Blanco's is well taken as to the issue of attorneys' fees. In its appeal, the Bank challenged the validity and scope of Blanco's lien along with the determination that it was jointly and severally liable for the contractual damages owed Blanco by defendant I. David Porras. The Bank did not argue, however, that the district court erred in holding it jointly and severally liable for Blanco's attorneys' fees pursuant to Tex.Prop.Code §§ 53.156(a) and 53.176, and that issue thus was not presented to us on appeal. Accordingly, we modify our earlier opinion to provide that the award of attorneys' fees (and associated interest and costs) against the Bank be allowed to stand.

In all other respects, the petitions for rehearing are DENIED.

* District Judge of the Middle District of Louisiana, sitting by designation.