# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 20, 2012

Lyle W. Cayce
Clerk

No. 11-20777
Summary Calendar

In the Matter of:  WAVE ENERGY, INCORPORATED, also known as Wave Resources, Incorporated,

Debtor

STOKES & SPIEHLER ONSHORE, INCORPORATED,

Appellant

v.

ROBERT E. OGLE, Liquidating Trustee of the Wave Energy Liquidating Trust,

Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-287

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20777

Under Texas law, for a document to be considered an affidavit, it must contain a jurat. This case deals with whether the mineral lien filed by Stokes & Spiehler Onshore in this bankruptcy action contained such a jurat. Because we agree with the district court that the statement by the notary in this case was insufficient to meet Texas's requirements for a jurat, we AFFIRM.

## I.  BACKGROUND

On July 1, 2009, Wave Energy, Inc. ("Wave") became the subject of an involuntary Chapter 7 bankruptcy case, which was later converted to a Chapter 11 case. When the case was converted to a Chapter 11 case, the bankruptcy court directed the U.S. Trustees to appoint a Chapter 11 trustee, a post to which Appellee Robert E. Ogle was appointed. Wave's primary assets were three gas-producing wells in Zapata County, Texas (the "De Garza Wells"). In February 2008, Wave entered into a Joint Operating Agreement (the "JOA") with Whitson, as operator, to drill and complete the De Garza Wells. Whitson, in turn, hired various vendors to perform services on the De Garza Wells, including Appellant Stokes & Spiehler Onshore, Inc. ("S&S"). S&S performed engineering services for Whitson and charged him $150,026.54, which is not disputed. Whitson, as he did to many vendors, failed to pay S&S. In an effort to recover, S&S timely filed and properly recorded its "Affidavit Claiming Lien on Mineral Property," pursuant to Texas Property Code § 56.003(a), against the De Garza Wells. S&S filed its claim against Wave with the bankruptcy court on January 21, 2010, and Ogle objected on April 8. In the interim, the bankruptcy court approved a mediated settlement agreement through which other vendors settled their claims against Wave for the principal amount plus five percent interest.

The first sentence of S&S's lien filing states: "Affiant, Bruce M. Jordan, on oath swears that the following statements are true and are within his personal knowledge." Jordan, who is the president of S&S, then states that the filing "is

2

No. 11-20777

made to perfect a lien against the mineral property described below." At the end of the document and below Jordan's signature stands the following:

> This instrument was acknowledged before me on May 21st, 2009, by Bruce M. Jordan, as President of Stokes and Spiehler Onshore, Inc., a Louisiana corporation, on behalf of said corporation.

> /s/ Raymond E. Beyt
> Notary Public in and for the
> State of Louisiana

In his objection, Ogle contends that these statements are insufficient to constitute the required jurat under Texas law.

The bankruptcy court granted summary judgment to Ogle on his objection to S&S's claim on the De Garza Wells. S&S appealed that order to the district court pursuant to 28 U.S.C. § 158(a), which affirmed. S&S timely appealed that affirmance to this court, invoking our jurisdiction under 28 U.S.C. § 1291.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

In reviewing a bankruptcy appeal from the district court, this court applies the same standard to the bankruptcy court's findings of fact and conclusions of law that the district court applied—reviewing conclusions of law de novo and findings of facts for clear error. *In re Lothian Oil, Inc.*, 650 F.3d 539, 542 (5th Cir. 2011). Texas law governs the dispute in this case. In resolving issues of Texas law, we look to the decisions of the Texas Supreme Court. *Packard v. OCA, Inc.*, 624 F.3d 726, 730 (5th Cir. 2010). If there is no decision directly on point, then we must determine how that court, if presented with the issue, would resolve it. *Id.* In making this determination, "[t]he decisions of Texas intermediate appellate courts may provide guidance, but are not controlling." *Id.*

3

No. 11-20777

## III.  DISCUSSION

### A.     Lien Affidavit

Ogle's objection to S&S's claim is that S&S failed to secure a lien against the De Garza Wells.  Under Chapter 56 of the Texas Property Code, to secure a lien against mineral property, a lien claimant must file an affidavit with the county clerk of the county in which the property is located. Tex. Prop. Code § 56.021(a).  Texas law defines an affidavit as a "statement in writing of a fact or facts signed by the party making it, sworn[1] to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." Tex. Gov't Code § 312.011(1).  That is, an affidavit must be sworn to or affirmed before an authorized third party (such as a notary), who must certify that the affiant so swore to or affirmed the statement at issue.  *Guinn v. Bosque Cnty.*, 58 S.W.3d 194, 198 (Tex. App.—Waco 2001, pet. denied).  This certification is known as the "jurat." *Id.*  Without a jurat, a statement is not an "affidavit." *Id.* A mere acknowledgment that a document was executed for a particular purpose is insufficient. *Blanco, Inc. v. Porras*, 897 F.2d 788, 792 (5th Cir. 1990); *see also Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex. 1970)

The central dispute is whether the notary's certification in this case was a jurat or just a mere acknowledgment.  The crux of this inquiry is whether the affiant was sworn in the notary's presence.  This distinction between a valid jurat and a mere acknowledgment becomes clear when we compare two cases we discussed in *Blanco—Norcross v. Conoco, Inc.* and *Crockett v. Sampson*.  In *Norcross*, the Fourth Court of Appeals found a valid jurat where a notary certified a document containing the language

> Before me, the undersigned authority, on this day personally appeared JOHN W. NORCROSS, the defendant in the above

---

[1] The term "sworn" includes that which is "affirmed."  Tex. Gov't Code § 312.011(16).

No. 11-20777

entitled and numbered cause, and *after having been duly sworn*, did
state that . . .

720 S.W.2d 627, 629–630 (Tex. App.—San Antonio 1986, no writ) (emphasis added); *see also Choctaw Properties, L.L.C. v. Aledo I.S.D.,* 127 S.W.3d 235, 242 (Tex. App.—Waco 2003, no pet.); *Griffin v. Baylor College of Medicine*, 945 S.W.2d 158, 159–60 (Tex. App.–Houston 1997, no writ). In *Crockett*, by contrast, the Third Court of Appeals found invalid a document that stated, "Sidney Sampson, Affiant, makes oath and says . . . " and the notary certified

> Before me, Edith Ricketson, a Notary Public, in and for the State and County aforesaid, on this day personally appeared Sidney Sampson known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

439 S.W.2d 355, 357, 360 (Tex. App.–Austin 1969, no writ); *see also Perkins*, 462 S.W.2d at 566, 568. Therefore, under Texas law, where the notary fails to certify that it he witnessed the oath, there is no jurat.

This distinction accords with our holding in *Blanco*. There, we held valid "Blanton's self-styled 'affidavit,'" which began: "'[B]efore me, the undersigned authority, personally appeared ZANE BLANTON, president of Blanco, Inc., . . . who, upon his oath, deposed and stated . . . ' and conclude[d] with a notary's seal and acknowledgement that the document was executed as the act of Blanco." *Blanco*, 897 F.2d at 792. In *Blanco*, like in *Norcross*, the notary specifically referenced the affiant's oath.

This case strikes us as quite similar to *Crockett*. Like *Crockett*, Jordan in his purported affidavit makes his statements under oath. *Compare supra* ("Affiant, Bruce M. Jordan, on oath swears . . . ") *with Crockett*, 439 S.W.2d at 355 ("Sidney Sampson, Affiant, makes oath and says . . . "). Also like *Crockett*, the certification does not contain any language showing that the oath was sworn

in the notary's presence.  Absent such a certification, there is no jurat and consequently, no valid affidavit.  *Crockett*, 439 S.W.2d at 358.

## B.    Third-Party Beneficiary

S&S alternatively argues that its rights as a secured creditor of Wave are conferred by its status as a third-party beneficiary to the JOA.  The Texas Supreme Court has explained

> there is a presumption against conferring third-party-beneficiary status on noncontracting parties.  In deciding whether a third party may enforce or challenge a contract between others, it is the contracting parties' intent that controls.  The intent to confer a direct benefit upon a third party must be clearly and fully spelled out or enforcement by the third party must be denied.  Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract.  A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit.

*S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (internal citations and quotation marks omitted).

S&S points specifically to Section V.D.3 of the JOA, which provides

> Protection from Liens: Operator [Whitson] shall pay, or cause to be paid, as and when they become due and payable, all accounts of contractors and suppliers and wages and salaries for services rendered or performed, and for materials supplied on, to or in respect of the Contract Area or any operations for the joint account, and shall keep the Contract Area free from liens and encumbrances except for those resulting from a bona fide dispute as to services rendered or materials supplied.

To be sure, this section contemplates benefits flowing to subcontractors, like S&S, as it obliges Whitson to pay subcontractors in order to ensure that the De Garza Wells are kept free from involuntary liens.  When read along with the other provisions of the JOA, it is clear that any benefit to S&S was merely

No. 11-20777

incidental.  Sections V.A and VII.B both act to block any third-party rights that may arise under the JOA.  Section V.A sets out that "Operator [Whitson] shall not be deemed, or hold itself out as, the agent of the Non-Operators [Wave] with authority to bind them to any obligation or liability assumed or incurred by Operator as to any third party," like S&S.  Additionally, Section VII.B states, "[N]o party shall have any liability to third parties to satisfy the default of any other party in the payment of any expense or obligation."

We find persuasive, as the district court did, the Texas courts' decisions in *J.P. Morgan Chase Bank, N.A. v. Texas Contract Carpet, Inc.*, 302 S.W.3d 515 (Tex. App.—Austin 2009, no pet.), and *Tawes v. Barnes*, 340 S.W.3d 419 (Tex. 2011).  In *J.P. Morgan Chase*, the court dealt with a provision similar to JOA Section V.D.3, which read, "[Agape] will duly pay and discharge, or cause to be paid and discharged, before the same shall become overdue all claims for labor, materials, or supplies that if unpaid might by law become a lien or charge upon any of its property . . . ."  302 S.W.3d at 532 (alteration and ellipsis in original). The court held that "[a]lthough the provisions acknowledge that subcontractors would be paid out of the funds in the account, none of the provisions clearly and fully express an intent to confer a benefit on the subcontractors." *Id.*  Similarly, in *Tawes*, the Texas Supreme Court found that a contract provision that required royalty payments to be made to third parties lacked "sufficient[] cl[arity] and unequivocal language demonstrating an intent to directly benefit" any third party.[2]  340 S.W.3d at 428.  In doing so, the court noted that JOAs are

---

[2] More specifically, the Texas Supreme Court stated,

> Barnes claims that the JOA Royalty Provision directs Tawes, as a consenting party, to pay the royalties owed to her pursuant to her oil and gas lease with Dominion.  Because the payment of royalties to Barnes would satisfy a legal duty owed by Dominion, her lessee, Barnes argues she received a direct, non-incidental benefit, and therefore qualifies as a third-party beneficiary. Tawes responds that the parties to the Dominion-Moose

7

used in part to shield non-operators from liability from costs or other obligations. *Id.* at 426. The court also noted that the lack of "specificity," in not identifying a specific sum owed, counseled against extending third-party beneficiary status. *Id.* at 428. The similarities between these cases and our present one bolster our conclusion that S&S was merely an incidental beneficiary under the JOA and therefore cannot enforce any rights under it as a third-party beneficiary. *Lomas*, 223 S.W.3d at 306. Accordingly, we hold that the JOA does not give S&S rights as a secured creditor.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's affirmance of the bankruptcy court's grant of summary judgment to Ogle.

AFFIRMED.

---

Agreements relied on the JOA to govern the relationships between the operators and non-operators of wells drilled on the Baker Unit. By allocating general expenses among the parties consenting to the drilling of additional, non-consent wells, Tawes asserts that the JOA Royalty Provision was not intended to directly benefit any lessor of a Baker Unit lease, but to provide clarity to the operator who must keep an accurate record of accounting. We consider Tawes's position to be more accurate and conclude that the parties did not intend to directly benefit Barnes. Rather, any benefit received by her was merely incidental.