**PERKINS CONSTRUCTION COMPANY
et al., Appellants,**

v.

**TEN–FIFTEEN CORPORATION et
al., Appellees.**

No. 15559.

Court of Civil Appeals of Texas,
San Antonio.

Nov. 10, 1976.

Rehearing Denied Jan. 19, 1977.

Wiley, Plunkett, Gibson & Allen, Daniel R. Rutherford, San Antonio, for appellants.

Foster, Lewis, Langley, Gardner & Banack, Pepos S. Dounson, Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., Luther H. Soules, San Antonio, Locke, Pernell, Boren, Laney & Neely, Harriet E. Miers, Dallas, for appellees.

KLINGEMAN, Justice.

This case involves the validity and priority of liens. At the trial the parties included three original contractors: Eddie Perkins and James Ballew, d/b/a Perkins Construction Company [Perkins]; Bill J. Cobb, d/b/a National Home and Commercial Services [Cobb]; and Winkler Construction Company [Winkler], the appellants herein; other contractors; the corporate owner at the time of construction and its president and general manager, Charles Burns; Lomas & Nettleton Financial Corporation [Lomas], the holder of a deed of trust lien on the property involved which was foreclosed; the individual guarantors of such deed of trust loan; the present corporate owner of the subject property [Castle Hills]; and individuals who own shares in such corporation. Numerous varying claims were asserted by almost every party against almost every other party, but all these claims were resolved at the trial except those concerning the validity and priority of appellants' purported liens. Trial was to a jury[1] and judgment entered based in part on the jury's verdict and in part on motions for directed verdict and motions for judgment non obstante veredicto.[2] Only Perkins, Winkler, and Cobb appeal from such judgment.

By six points of error appellants contend that the trial court erred (1) in not granting the motion for judgment of Perkins, Cobb, and Winkler; (2) in not holding that Perkins had a valid mechanic's and materialman's lien; (3) in not holding that Cobb had a valid mechanic's and materialman's lien; (4) in not holding that Winkler had a valid mechanic's and materialman's lien; (5) in not holding that the liens of Perkins, Cobb, and Winkler had priority over the deed of trust lien of Lomas; and (6) in not ordering a foreclosure of the liens of Perkins, Cobb, and Winkler with the proceeds first being applied to the satisfaction of the appellants' liens.

By a final point of error appellants assert that the unnecessary cost of the transcript should be assessed against appellee, Lomas.

Although all three appellants rely heavily on the "relation back" rule, hereinafter discussed, there are factual and other differ-

---

1. In answer to Special Issue No. 1, the jury found that Winkler commenced construction on the Ten-Fifteen Corporation job prior to September 4, 1971. The other answers to Special Issues are not here material to this appeal.

2. The judgment may be summarized as follows:
   a. Lomas recover judgment against Ten-Fifteen Corporation and Charles Burns for $121,287.44, plus attorney's fees and interest.
   b. Calhoun Electric Company recover judgment for $4,042.22 and costs of court against Lomas with a lien thereon in favor of Calhoun on certain specifically described removals.
   c. Except to the extent of the lien on certain removals in favor of Calhoun, no liens favoring any contractor remain on the property subject to this litigation.
   d. Lomas have judgment for full indemnification against Leta J. Glasscock and Gretchen Glasscock in the amount of such judgment in favor of Calhoun.
   e. Leta J. Glasscock have judgment against Charles Burns for $200,000.00, plus interest.
   f. Gretchen Glasscock have judgment against Charles Burns for $200,000.00, plus interest.
   g. Winkler have judgment against Ten-Fifteen Corporation and Charles Burns for $5,427.59, plus attorney's fees and interest.
   h. Perkins have judgment against Ten-Fifteen Corporation and Charles Burns for $34,038.12, plus attorney's fees and interest.
   i. National Home and Commercial Services [Cobb] have judgment against Ten-Fifteen Corporation and Charles Burns for $5,205.92, plus attorney's fees and interest.
   j. Calhoun have judgment against Ten-Fifteen Corporation and Charles Burns for $17,726.00, plus attorney's fees and interest.
   k. David Allen have judgment against Ten-Fifteen Corporation and Charles Burns for $3,953.70, plus attorney's fees and interest.

ences in some respect in the three liens here involved, and for the purpose of this opinion they will be discussed under two general categories: (1) the Perkins and Cobb liens, and (2) the Winkler lien.

Charles Burns and investors, Leta J. Glasscock and Gretchen Glasscock, executed an agreement to form the Ten-Fifteen Corporation for the purpose of building and operating an office building. Burns had discussed and generally planned the construction with an architect, Kearney Albaugh, and, among other things, had contacted Perkins to obtain some general cost figures regarding the construction of a "tilt-slab" type building, and had also contacted Winkler to obtain some cost figures for site and foundation work.

There was no general construction contract and no general contractor for construction of the building; appellants were original contractors who performed labor and delivered material directly for the owner. Although the evidence is disputed as to both date and nature, there is some evidence of agreements between Burns and the three appellant contractors with regard to work to be done; Perkins pertaining to the interior work, Winkler as to site and foundation work, and Cobb as to carpeting and tile work. In the summer of 1971 the Ten-Fifteen Corporation applied to Lomas for interim financing, the loan was closed, and on September 3, 1971, the Ten-Fifteen Corporation gave a deed of trust on a tract of approximately two acres to secure one note in the principal sum of $575,000.00, dated September 2, 1971, payable to Lomas, which deed of trust was recorded on September 3, 1971. In connection with such loan, Lomas required that the incorporators sign the note as guarantors in their individual capacity, and that an existing vendor's lien against the property involved, in the amount of $14,346.63, be paid out of the loan's first proceeds.

Actual construction work on the building did not commence until the latter part of September 1971, although there is some evidence that prior to that time Perkins did some site clearing work and that Winkler

had been to the job site and set up batter boards. Cobb, who is in the floor covering business, did not get involved until the early part of 1972.

It was not until late 1972 that the Ten-Fifteen Corporation began faltering in payment to contractors, and the affidavits for liens relied on by appellants were filed in the late summer and fall of 1973.

On September 6, 1973, Lomas posted notice of foreclosure under its deed of trust, and on October 2, 1973, the trustee's sale was held at which Lomas was the highest bidder, bidding on the property for $400,000.00. Subsequent to the trustee's sale, Lomas sold the property to Castle Hills Executive Plaza, Inc. [Castle Hills].

### The Perkins and Cobb Liens

(A) The affidavit to fix lien relied on by Perkins is dated October 10, 1973, and asserts a claim and lien in the amount of $34,038.12 for labor and material for interior and office space work. It is not sworn to and does not contain an oath or jurat, but merely contains an acknowledgment. One of the affidavits relied on by Cobb is dated October 11, 1973, and asserts a claim or lien in the amount of $3,165.60 for carpeting and floor work. This affidavit is not sworn to and does not contain an oath or jurat, but contains only an acknowledgment.

The Hardeman Act; Arts. 5452, 5453, 5455, et seq., Tex.Rev.Civ.Stat.Ann. (1958), provides generally the method for fixing liens by original contractors, subcontractors, and other persons entitled to a lien under the provisions of such Act. Article 5453 prescribes the method for fixing liens provided for under Art. 5452. In part, it provides that every original contractor, not later than 120 days after his indebtedness accrues, shall file his affidavit claiming a lien in the office of the county clerk. Article 5455 describes the form of claim to be used under these statutes and states, in part, that an affidavit claiming a lien filed for record by anyone claiming the benefit of the Act shall be signed by the claimant and requires a sworn statement of his claim.

Tex.Rev.Civ.Stat.Ann., art. 23, § 18 (1969), defines an affidavit as follows:

'Affidavit' means a statement in writing of a fact or facts signed by the party making it, and sworn to before some officer authorized to administer oaths, and officially certified to by such officer under his seal of office.

It is clear that the instrument filed for record by Perkins, dated October 10, 1973, and the instrument filed for record by Cobb, dated October 11, 1973, are not affidavits. They are not sworn to and have no oaths or jurats on them, but contain only acknowledgments. The two are not the same. *Perkins v. Crittendon,* 462 S.W.2d 565 (Tex.1970)[3]; *Wilde v. Buchanan,* 303 S.W.2d 518 (Tex.Civ.App.—Austin), *writ ref'd n. r. e.* 157 Tex. 606, 305 S.W.2d 778 (1957); *Conn, Sherrod & Co. v. Tri-Elec. Supply Co.,* 535 S.W.2d 31 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.); *Crockett v. Sampson,* 439 S.W.2d 355 (Tex.Civ.App.—Austin 1969, no writ).

The two claims for liens above described were not sworn to and do not comply with the statute for fixing liens, and in our judgment, are not affidavits. They were fatally defective and of no force or effect.

(B) The other purported lien of Cobb's was properly sworn to, however, it was not filed until August 1973, and it is necessarily dependent on the "relation back" rule in order to be effective.

The "relation back" rule was enunciated in *Oriental Hotel Co. v. Griffiths,* 88 Tex. 574, 33 S.W. 652 (1895), as follows:

When the building has been projected, and construction of it entered upon,— that is, constructed for,—the circumstances exist out of which all future contracts for labor and material necessary to its completion may arise, and for all such labor and material a common lien is given by the statute; and in this state of cir- cumstances the lien to secure each has its 'inception.'

In *Sullivan v. Texas Briquett & Coal Co.,* 94 Tex. 541, 63 S.W. 307 (1901), the Supreme Court clarified the Oriental Hotel rule and restricted its application to the situation where a building has been projected and a contract for its construction executed by the owner and a contractor.

In *McConnell v. Mortgage Investment Co. of El Paso,* 157 Tex. 572, 305 S.W.2d 280 (1957), the Supreme Court reaffirmed the "relation back" rule for the time of inception of mechanic's and materialman's liens, providing that there is a general construction contract between the owner and contractor in existence calling for construction of the projected building. If there is such a general construction contract, the liens incurred in construction of the projected building are on a parity with each other and have their inception on a date such contract was executed. *See Finger Furniture Co. v. Chase Manhattan Bank,* 413 S.W.2d 131 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.).

It is to be remembered that in the case before us there is no general construction contract or general contractor.

It is clear that any right that Cobb may have to a mechanic's and materialman's lien accrued and was perfected, if at all, long subsequent to the perfection of the deed of trust lien held by Lomas. Such affidavit and claim of lien was filed for record almost two years after the execution and recording of the Lomas deed of trust. Any right that Cobb may have to a mechanic's and materialman's lien is necessarily dependent on the date he first performed labor or delivered material to the job site. This occurred sometime in the year 1972, several months after the inception of the Lomas deed of trust lien. There is no contention that Cobb performed labor or delivered material prior to the recording of the deed of trust.

---

**3.** An acknowledgment (that an instrument was executed for the purposes therein expressed) does not purport to be a certification that the person acknowledging it swears to the truth of the matters set out. *Perkins v. Crittendon, supra.*

(C) With regard to Perkins' purported lien, there is some testimony that one of Perkins' employees did some clearing up work on the lot prior to the deed of trust, but no materials were delivered or any labor performed by Perkins pursuant to actual construction prior to November 1971. Clearing up the site is not sufficient to constitute the commencement of construction for purposes establishing the inception of the Perkins lien. *S. K. Y. Investment Corp. v. H. E. Butt Grocery Co.,* 440 S.W.2d 885 (Tex.Civ.App.—Corpus Christi 1969, no writ); *Rupp v. Earl H. Cline & Sons, Inc.,* 230 Md. 573, 188 A.2d 146, 1 A.L.R.3d 815 (1963), Annot., "What Constitutes 'Commencement of Building Improvement' for Purposes of Determining Accrual of Mechanics' Lien," 1 A.L.R.3d 822 (1965); *H. B. Deal Const. Co. v. Labor Discount Center, Inc.,* 418 S.W.2d 940 (Mo.1967). Moreover, Perkins failed to request any issues or secure any jury finding that he commenced construction prior to September 3, 1971, and that ground or recovery, if it ever existed, is now waived. Tex.R.Civ.P., Rule 279. We have already pointed out that the so called Perkins affidavit is not sworn to, and in our opinion does not constitute an affidavit or comply with the statute for fixing a lien.

The doctrine of "relation back" is of no help or benefit to either the Perkins or Cobb purported liens.

(D) Appellants, Perkins and Cobb, also failed to prove that their purported liens were timely filed. Article 5453 provides an original contractor entitled to a lien under the Hardeman Act must file an affidavit claiming such lien not later than 120 days after the indebtedness accrues, as defined in Art. 5467 of the Act. Absent a general contract or general contractor, each original contract must stand on its own footing. Although the record does not conclusively establish when the work upon which appellants now assert a lien was done, it is clear that all such work was commenced and finished long subsequent to the filing of the Perkins and Cobb affidavits for liens, and more than 120 days after such indebtednesses accrued.

## The Winkler Lien

Winkler relies on an affidavit claiming a mechanic's and materialman's lien which is dated August 4, 1973, and subsequently filed. This instrument contains a proper oath or jurat.

(A) Winkler must and does rely on the doctrine of "relation back." His position in this respect, disregarding other defects and irregularities in connection with his affidavit, is better founded than that of Perkins and Cobb in that he does have a jury finding that he delivered material and performed services before Lomas' deed of trust was recorded. It is to be remembered, however, that there was no general construction contract or general contractor involved, and also that his affidavit for fixing a lien was not executed and filed until the latter part of 1973, almost two years after the recording of the deed of trust. We have heretofore discussed the doctrine of "relation back." Under the record, any lien which Winkler might have must relate back to the date upon which the particular work for which he seeks a lien was performed. The work originally done by Winkler pursuant to the 1971 contract was fully performed and fully paid prior to the charge for which Winkler now seeks to assert a lien. The work which now serves as the basis for the Winkler claim in this action consists of paving, curbing, and sidewalk work. The work originally done at the job site by Winkler was completed and paid for long before the extra work here involved was ever done. Any lien asserted by Winkler in connection with the extra work must have its inception at the date the additional work was done, and does not relate back to any earlier point in time. *Finger Furniture Co. v. Chase Manhattan Bank,* supra; *McConnell v. Mortgage Investment Co. of El Paso,* supra.

(B) Winkler's affidavit states that Winkler claims a mechanic's and materialman's lien on the following described property:

A 1.988 acre tract out of Tract 1, Castle Hills City Block 109, WOOTLIN SUBDIVISION, Bexar County, Texas.

Appellees assert that this description is not sufficiently definite or certain to identify the property on which the lien is to attach and is fatally defective. We agree. It is to be noted that there are no other words of identification of the property in the affidavit, and no where in such affidavit is there any statement as to who owns the property described therein, or any reference or statement with regard to the ownership of such property. The description is different and distinguishable from such cases as *Pickett v. Bishop,* 143 Tex. 207, 223 S.W.2d 222 (1949), wherein the Court said:

> The settled rule in this state is that such a description, by reason of the use in the memorandum or contract of such words as 'my property', 'my land', or 'owned by me', is sufficient when it is shown by extrinsic evidence that the party to be charged and who has signed the contract or memorandum owns a tract and only one tract of land answering the description in the memorandum.[4]

In *Crow v. Davis,* 435 S.W.2d 176 (Tex. Civ.App.—Waco 1968, writ ref'd n. r. e.), the property involved was described as follows: ". . . 9.1 acres out of Isaac B. Webb Survey, Abstract No. 1574 Dallas County." The Court of Civil Appeals held that such description was "not so definite and certain upon its face as to be identified with reasonable certainty and is void."

In *Jones v. Mid-State Homes, Inc.,* 163 Tex. 229, 356 S.W.2d 923 (1962), the description contained in the instrument was as follows:

> 'A certain lot in the Oltorf Addition of Marlin, Falls County, Texas, and being recorded in the City Hall at Marlin, Tex-

as, and said lot being in Block No. 7 of said addition and being north of Roosevelt Street south of the City of Marlin, and being west of the Sally Dunbar property. Said property is about 52 by 150 feet in size.'

The Supreme Court held that the description contained in such instrument was wholly defective and fails to furnish a nucleus of description sufficient to identify the land claimed. The Court cited *Smith v. Sorelle,* 126 Tex. 353, 87 S.W.2d 703 (1935), noting that the Court in such case, in holding the description was ineffective, said:

> The rule is well settled that parol evidence cannot be introduced to vary or contradict the descriptive data of a deed. 14 Texas Jurisprudence § 251, pp. 1045, 1046. The descriptive words in an instrument should be given a liberal construction, in order that the writing may be upheld, and parol evidence is admitted to explain the descriptive words and to identify the land; but the instrument itself must contain a nucleus of description. The parol testimony must directly be connected with the descriptive data, and when more than this is required, the description is insufficient. 14 Texas Jurisprudence § 204, pp. 992, 993, and authorities cited.

In *Greer v. Greer,* 144 Tex. 528, 191 S.W.2d 848 (1946), the Court held that the office of description in a deed, judgment, or other writing is to furnish means of identifying of the land and a description must be so definite upon the face of the instrument or in some other writing referred to that the lien can be identified with reasonable certainty, otherwise the instrument is void under the Statute of Frauds.

There is testimony in the record before us by the President of First American Title Company that Tract 1 consists of 12 acres

---

4. In *Pickett v. Bishop, supra,* the Court of Civil Appeals held description of "20.709 acres out of John Stephens 640 acre survey in Tarrant County, Texas" to be insufficient, without taking into consideration the words "my property" in the body or face of the instrument. The Supreme Court held that such decision would have been correct if the only description of the land was that above quoted, but stated that the words "my property" in the body of the instrument are not to be ignored when it is shown by extrinsic evidence that the party to be charged and who signed the contract or memorandum owns a tract and only one tract answering the description in the memorandum.

of land. He also testified that he could not specifically locate the 1.988-acre tract on which a lien is sought to be imposed from the description contained in the Winkler instrument, and without further description in the instrument he had no way of knowing where such 1.988-acre tract of the 12-acre tract was located.

We have concluded that the description of land in the Winkler affidavit is too indefinite and uncertain to fix a valid lien upon the property involved in this suit and is fatally defective.

■ (C) The record does not establish that Winkler timely filed his affidavit claiming a mechanic's and materialman's lien. The labor and material for which the lien is sought was completed and finished before the end of December 1972. The affidavit for lien was filed in the latter part of 1973. We have heretofore discussed the question of timely filing an affidavit required to perfect a lien in connection with the Cobb and Perkins affidavits. The same discussion here applies, and the record does not establish that Winkler timely filed his lien.

■ (D) With regard to the priority of the Lomas deed of trust lien, September 3, 1971, it should be noted that at the time the property here involved was sold to Charles Burns, the vendor retained a vendor's lien for a part of the purchase price. This property was subsequently conveyed to Morton Shefts and then to the Ten-Fifteen Corporation, and in all of such conveyances the respective grantees assumed the indebtedness secured by the vendor's lien. The deed of trust to Lomas, here involved, secures a note in the amount of $575,000.00 given by the Ten-Fifteen Corporation, and out of the proceeds of this loan the outstanding vendor's lien was paid off. The deed of trust contains this provision:

> To the extent that proceeds of the Note [the deed of trust note] are used to pay any outstanding lien, charge or prior encumbrance against the herein-described premises, such proceeds have been advanced by Beneficiary [Lomas] at Grantors' request; and Beneficiary shall be subrogated to any and all rights and liens owned or granted by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether said liens, charges or encumbrances are released of record.

On September 3, 1971, by the terms of the deed of trust foreclosed by Lomas, Lomas became subrogated to the right of a holder of a vendor's lien against the property covered in the deed of trust. This vendor's lien had its inception long prior to the time any work was done by any of appellants. Foreclosure of the deed of trust was effective to foreclose the vendor's lien and such foreclosure extinguished all the liens inferior to the vendor's lien. *See Irving Lumber Company v. Alltex' Mortgage Company,* 468 S.W.2d 341, 344 (Tex.1971).

Moreover, the deed of trust lien involved had its inception long prior to any purported liens of Perkins and Cobb. The foreclosure and sale under the Lomas deed of trust was effective to cut out any inferior liens on the land and the liens, if any, filed by appellants were wiped out and extinguished.

Appellants' last point of error is that the unnecessary cost of the transcript should be assessed against appellee, Lomas. Appellees' reply is that the cost of the transcript should be paid by the unsuccessful party.

The transcript contains 869 pages. Appellants filed a request for transcript in which it specifies certain designated material be included in such transcript. Appellee, Lomas, filed a designation which stated: "The District Clerk is to include in the transcript on appeal of the above referenced cause all documents in the file of the District Clerk in Cause No. 73–CI–11001 . . . . ."

An examination of the entire transcript reveals that there is considerable material therein that is unnecessary and in no way pertinent or material to the herein appeal. This Court has made some effort, without too much success, to have the parties designate or delineate the matter they consider material. This was done primarily in an

effort to help us in working on this appeal, but is not of great benefit in determining the matter of cost of the transcript, which has already accrued.

Courts have considerable discretion in adjudging costs, and when unnecessary and useless matters are included in the transcript, the expenses thereof may be taxed as costs against the party responsible therefor, whether it is the appellant or appellee, regardless of the right a party may have generally to recover the costs of appeal. 15 Tex.Jur.2d, Costs, § 100; *Hernandez v. Castillo,* 309 S.W.2d 938 (Tex.Civ. App.—San Antonio 1958, writ ref'd); *Durrett v. Boger,* 234 S.W.2d 898 (Tex.Civ.App. —Texarkana 1950, no writ).

From an examination of the entire transcript we have concluded that it would be fair and just to assess one-half of the cost of the transcript against appellee, Lomas, and one-half against appellants, and it is so ordered.

For the reasons hereinbefore set forth, we have concluded that none of appellants' asserted liens were in force and effect at the time of the trial of this cause. The trial court correctly held that the property involved in this suit is not subject to the liens of Winkler, Perkins, or Cobb.

The judgment is affirmed.

BARROW, Chief Justice.

I concur in the result.

CADENA, J., concurs.