Douglas WOHLFAHRT, M.D. and
Lynn Wohlfahrt, Appellants,

v.

John H. HOLLOWAY, Appellee.

John H. Holloway, Appellant,

v.

Douglas Wohlfahrt, M.D. and Lynn
Wohlfahrt, Appellees.

Nos. 14–03–01084–CV, 14–03–01130–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 2, 2005.

Rehearing Overruled Aug. 18, 2005.

Levon G. Hovnatanian, Raul Herman Suazo, Kevin Graham Cain, Houston, for appellants.

John Howard Holloway, Houston, pro se.

Panel consists of Chief Justice HEDGES and Justices FOWLER and EDELMAN.

## OPINION

ADELE HEDGES, Chief Justice.

Douglas Wohlfahrt, M.D. and Lynn Wohlfahrt appeal from the trial court's judgments favoring John Holloway on Holloway's quantum meruit and debt causes of action and the Wohlfahrts' Deceptive Trade Practices Act counterclaims. In three issues, the Wohlfahrts contend that the trial court erred in (1) granting judgment on the quantum meruit claim, (2) disregarding the jury's DTPA violation findings, and (3) calculating interest on the debt claims. Holloway brings a separate appeal from the taxation of costs in an earlier appeal in this case. We reverse and render on Holloway's quantum meruit cause of action, reverse and remand on the Wohlfahrts' DTPA causes of action, affirm on Holloway's debt causes of action, and dismiss Holloway's appeal regarding the taxation of appellate costs.

## I. Background

There is considerable dispute in the record and on appeal regarding the nature of the relationship between Holloway and the Wohlfahrts. Holloway is an attorney specializing in medical malpractice cases. Douglas Wohlfahrt is a medical doctor. It is uncontroverted that Holloway handled various legal matters for the Wohlfahrts between 1983 and 1992. It is also uncontroverted that during this time Dr. Wohlfahrt reviewed medical files for Holloway related to Holloway's legal practice, although the number and value of such reviews was hotly contested.

The Wohlfahrts testified that they had a bartering arrangement with Holloway, under which Holloway exchanged his legal services for Dr. Wohlfahrt's review of files. Holloway testified that there was no such arrangement and that the Wohlfahrts owed him for his legal services.

It is further undisputed that for certain of his services Holloway billed the Wohlfahrts and the Wohlfahrts paid him, but for other services, Holloway did not bill (until March 1992 when suit was filed) and the Wohlfahrts did not pay. Holloway filed the present lawsuit seeking recovery of his fees for services rendered over the years and for recovery of a loan he made to the Wohlfahrts. The Wohlfahrts counterclaimed alleging DTPA violations, among other things.

This is the second appeal in this lawsuit. After the first trial, the trial court ruled that the Wohlfahrts' DTPA counterclaims were barred by either section 16.069 of the

Civil Practice and Remedies Code, which requires counterclaims to be filed within 30 days of the date the answer is due, or the two-year statute of limitations for DTPA claims. TEX. BUS. & COM.CODE ANN. § 17.565 (Vernon 2002); TEX. CIV. PRAC. & REM.CODE ANN. § 16.069 (Vernon 1997). On appeal, the First Court of Appeals reversed, holding that the counterclaims were not barred. *Wohlfahrt v. Holloway*, No. 01–99–00205–CV, 2001 WL 84212 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (not designated for publication). The First Court awarded appellate costs against Holloway but remanded to the trial court for a determination of the costs for two portions of the reporter's record.

In the second trial, the jury received a voluminous charge that included 32 separately numbered questions, requiring as many as 161 separate answers.[1] In the parts relevant to this appeal, the jury found that (1) there was no bartering agreement between the parties; (2) there was no attorney-client agreement between the parties; (3) Holloway loaned money to the Wohlfahrts, and the Wohlfahrts paid some of it back; (4) Holloway knowingly engaged in a false, misleading, or deceptive act or practice that caused damages to the Wohlfahrts; and (5) Holloway knowingly engaged in an unconscionable action or course of action that caused damages to the Wohlfahrts. The jury also provided amounts for the "reasonable attorney's fee[s]" for the services rendered by Holloway for the Wohlfahrts, for the "reasonable value" of Dr. Wohlfahrt's review of medical files for Holloway, and for the

"necessary services" of the Wohlfahrts' attorneys in the present lawsuit.

Post—verdict, the trial court ruled that (1) Holloway was entitled to judgment on his pled quantum meruit claim for the services he provided to the Wohlfahrts; (2) Holloway was entitled to judgment on his debt claims; and (3) the Wohlfahrts' counterclaims, including the DTPA claims, were time-barred. The court entered judgment accordingly, awarding Holloway $99,776 plus pre- and post—judgment interest on the fees and $16,162.22 plus pre— and post—judgment interest on the debt.

On appeal, Holloway initially contends that the Wohlfahrts waived their appeal by failing to file a proper notice of appeal. The Wohlfahrts contend that the trial court erred in granting judgment on the quantum meruit claim, disregarding the jury's DTPA violation findings, and calculating interest on the debt claim. Holloway also complains of the taxation of costs in the earlier appeal.

## II. Notice of Appeal

■ Holloway initially argues that the Wohlfahrts' appeal should be dismissed because they failed to provide a proper notice of appeal. The trial court signed a number of final judgments in the case below. Some of the judgments superceded earlier judgments. Holloway asserts that the Wohlfahrts' notice of appeal was invalid because it was taken from earlier, superseded judgments and was not amended to indicate the correct final judgments.[2]

---

1. The questions were grouped into related blocks such as "Two," "Two 'A,'" and "Two 'B.'" Several questions also had subparts, mostly, but not strictly, related to damages elements. Many of the questions went unanswered because of the jury's responses to other related questions.

2. There were three cause numbers below, which were combined for trial. The original final judgments for these cause numbers were signed on June 26, 2003. The Wohlfahrts filed their notice of appeal on September 24, 2003. The trial court then signed new final judgments on September 24, 2003, and again on October 29, 2003.

However, the Texas Rules of Appellate Procedure make it clear that the Wohlfahrts were not required to file a new notice of appeal when the trial court signed new final judgments. Under Rule 25.1(a), an appeal is perfected when a notice of appeal is filed with the trial court clerk. Tex.R.App. P. 25.1(a). Further, Rule 27.3 states that

> After an order or judgment in a civil case has been appealed, if the trial court modifies the order or judgment, or if the trial court vacates the order or judgment and replaces it with another appealable order or judgment, the appellate court must treat the appeal as from the subsequent order or judgment and may treat actions relating to the appeal of the first order or judgment as relating to the appeal of the subsequent order or judgment.

TEX.R.APP. P. 27.3. Thus, by operation of Rules 25.1 and 27.3, the Wohlfahrts provided a proper notice of appeal. Consequently, Holloway's argument is without merit.

### III. Quantum Meruit

#### A. The Charge

The Wohlfahrts first contend that the trial court erred in rendering judgment for Holloway on his quantum meruit claim. The parties initially dispute whether the quantum meruit claim was submitted to the jury. *See* TEX.R. CIV. P. 279 (providing that all independent grounds of recovery not submitted or requested in the charge are waived unless conclusively proven). We find that it was not.

Quantum meruit is an equitable remedy based upon an implied promise to pay for benefits received. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992). *Myrex Indus., Inc. v. Ortolon* 126 S.W.3d 548, 550 (Tex.

App.-Houston [14th Dist.] 2003, pet. denied). In order to prove quantum meruit, a party must show that (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged and used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990); *Clear Lake City Water Auth. v. Kirby Lake Dev., Ltd.,* 123 S.W.3d 735, 753 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

Holloway maintains that the claim was submitted in Question Two "A," which asked: "What do you find to be a reasonable attorney's fee for the necessary services rendered by John H. Holloway in handling each of the following legal matters, stated in dollars and cents?" Question Two "A" also included an instruction that

> [i]n determining what is a "reasonable attorney's fee" for legal services and time expended by an attorney for the use and benefit of a client in legal matters, you are instructed that you should consider the following factors in deciding the "reasonableness" of the amount of attorney's fees to be awarded....

The instruction then listed the factors required by the Texas Supreme Court to be submitted for the jury's consideration when awarding attorney's fees. *Arthur Andersen & Co. v. Perry Equipment Corp.,* 945 S.W.2d 812, 818 (Tex.1997); *see also* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES— BUSINESS, CONSUMER, INSURANCE & EMPLOYMENT PJC 110.43 cmt. (2003). Lastly, the question listed forty—four items or legal

matters, and after each, the jury placed a dollar figure.

There are three reasons why this question should not be read as presenting a quantum meruit claim: (1) it does not include the required elements, (2) its placement in the charge suggests that it is part of a breach of contract submission, and (3) at trial, Holloway denied that he was seeking recovery under a quantum meruit theory. We shall discuss each in turn.

■ First, Question Two "A" does not include all of the required elements for quantum meruit; indeed, it does not appear to include *any* of the required elements in proper form. *See Vortt Exploration*, 787 S.W.2d at 944; *Clear Lake City Water Auth.*, 123 S.W.3d at 753; PJC 101.42. Holloway argues that the court's instruction on reasonable attorney's fees satisfies the elements of quantum meruit; however, he provides no explanation for this assertion, and, at a minimum, nothing in the instruction required the jury to consider the fourth element of quantum meruit, *i.e.*, that services were rendered under

such circumstances as reasonably notified the person sought to be charged that the plaintiff was expecting to be paid. *See Vortt Exploration*, 787 S.W.2d at 944; *Clear Lake City Water Auth.*, 123 S.W.3d at 753.[3]

Second, the question's placement in the charge makes it clear that it was a submission regarding contract damages. As explained above, the voluminous charge was divided into question groupings related to specific causes of action.[4] Question Two asked whether the parties "agree[d] to enter into an attorney-client relationship whereby the Wohlfahrts were to pay John Holloway for his reasonable and necessary legal services?" Question Two "B" asked whether "the Wohlfahrts breach[ed] this agreement with John Holloway?" Thus, it is clear that these three questions (Two, Two "A," and Two "B") should be read together as a breach of contract submission, and Question Two "A" should not be read separately as a quantum meruit submission.[5]

3. Under Rule 279, if a ground of recovery consists of more than one element and one or more elements is submitted and one or more is omitted, then the omitted elements are deemed found if supported by factually sufficient evidence. Tex.R. Civ. P. 279. However, the rule further requires that for any elements of a ground of recovery to be considered submitted, the elements must be "necessarily referable thereto." *Id.; see also Clayton W. Williams, Jr., Inc. v. Olivo*, 912 S.W.2d 319, 327 (Tex.App.-San Antonio 1995) (explaining that the "necessarily referable" requirement is designed to give fair notice and that if the elements are not necessarily referable to the ground of recovery urged then the ground is waived), *aff'd in relevant part*, 952 S.W.2d 523 (1997). As will be explained in the text following this, even if the instruction on attorney's fees could be read as including elements common to a claim of quantum meruit, the structure of the charge indicates that these elements are not necessarily referable to that cause of action. They are instead integral parts of a breach of contract submission. Be-

cause the court did not necessarily submit any elements of quantum meruit, we need not deem any remaining elements in support of the theory. *Clayton W. Williams, Jr., Inc.*, 952 S.W.2d at 529.

4. For example, the submission on the Wohlfahrts' DTPA causes of action included Question 13, asking about false, misleading, or deceptive acts; Question 13A, asking about unconscionable actions; Question 13B, asking about damages caused; Question 13C, asking whether the conduct was committed knowingly; and Question 13D, asking about mental anguish.

5. Question Two "A" is not expressly contingent on a positive answer to Question Two. This apparently lead the jury to ask during deliberations whether Two "A" was contingent on their answer to Two. The judge who presided over the trial and submitted the charge was a visiting judge and was not on the bench when the jury asked this question.

■ Third, at trial, Holloway denied that he was seeking recovery under quantum meruit. During a discussion of the relevance of certain evidence, the Wohlfahrts' counsel suggested Holloway was seeking quantum meruit, and Holloway, who was representing himself, responded, "I am not ever doing that.... I am just on the attorney's fees agreement pure and simple." Later, during the charge conference, when the Wohlfahrts' attorney offered a proposed submission on Holloway's quantum meruit claim, the judge said to Holloway, "You don't want quantum meruit?" Holloway replied, "I don't really care," and the judge said, "All right. Then I will leave it out."[6] These exchanges demonstrate that Holloway waived submission of the quantum meruit theory in the jury charge.

Because Question Two "A" did not include all the required elements for a quantum meruit submission, its placement in the charge suggests that it was part of a breach of contract submission, and Holloway expressly denied that he was seeking recovery under quantum meruit, we hold that the charge did not submit Holloway's quantum meruit claim to the jury.

### B. Conclusive Proof?

■ However, Holloway would still be entitled to judgment on his quantum meruit claim if he conclusively proved it. *See* TEX.R. CIV. P. 279. "An issue is conclusively established when the evidence is such that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982); *Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 749 n. 6 (Tex.App.-El Paso 2000, no pet.).

■ The first three elements of quantum meruit appear to be well established in the record: it is undisputed that (1) Holloway rendered valuable services for (2) the Wohlfahrts and that (3) the Wohlfahrts accepted these services and used and enjoyed them. *See Vortt Exploration,* 787 S.W.2d at 944 (providing elements of quantum meruit recovery). However, the evidence was strongly contested regarding the fourth element: whether the circumstances were such that the Wohlfahrts were reasonably notified that Holloway expected to be paid. *See id.*

Holloway points to his own testimony that the Wohlfahrts knew he expected to be paid and to the fact that he requested payment for certain services and the Wohlfahrts paid for those services. But the Wohlfahrts themselves testified repeatedly and consistently that they did not believe Holloway expected to be paid except on the few occasions when he told them that a particular service had costs out of the ordinary. On those occasions, he told them how much it was going to cost, and they paid the amount. Contrary to Holloway's assertion, the evidence that he sometimes told the Wohlfahrts that he

---

After conferring with the parties (who disagreed as to whether the one question should be contingent on the other), the sitting judge replied to the jury that they should just answer the charge as submitted.

Earlier, during the charge conference, the visiting judge initially conditioned Two "A" on Two but subsequently removed the condition when Holloway objected. Holloway did not mention quantum meruit in making his objection.

6. Holloway points out that at the beginning of the charge conference the judge indicated that he intended to charge the jury on both breach of contract and quantum meruit; however, this statement clearly occurred before the exchange detailed above in which Holloway expressed ambivalence toward a quantum meruit submission, and the court stated that it was leaving such submission out of the charge.

expected to be paid and got paid is inferential evidence that on other occasions, when he did not tell them that there were extraordinary costs, he did not expect to be paid. Holloway's services for the Wohlfahrts occurred over a nine—year period; that Holloway did not submit a bill for services and demand payment until after the parties had a falling out and suit was filed is further evidence that Holloway did not expect to be paid at the time services were rendered.[7] At a minimum, it suggests that the Wohlfahrts could have reasonably believed that Holloway did not expect to be paid. Thus, there was some evidence negating the fourth element of quantum meruit. *See id.* Accordingly, Holloway did not conclusively establish his quantum meruit cause of action, and the trial court erred in entering judgment in his favor on that claim. *See* Tex.R. Civ. P. 279; *Triton Oil & Gas,* 644 S.W.2d at 446. We sustain the Wohlfahrts' first issue.

## IV. "Time–Barred" DTPA Claims

The Wohlfahrts next contend that the trial court erred in holding that their DTPA counterclaims were time-barred. In response to questions "13" and "13A," the jury found that Holloway knowingly engaged in both (1) false, misleading, or deceptive acts or practices and (2) an unconscionable action or course of action that caused damages to the Wohlfahrts. In response to Question "13B," the jury found that Holloway's conduct caused the Wohlfahrts $4,469 in monetary damages, and in response to "13D," the jury found $100 in mental anguish damages. The court did not submit, and the parties did not request, any question regarding the accrual of the Wohlfahrts' DTPA causes of action or the application of the discovery rule. However, in its judgment, the trial court held that the Wohlfahrts' DTPA counterclaims were time—barred.

Holloway's arguments (in the trial court and on appeal) regarding whether the DTPA counterclaims were time-barred break down into two categories: (1) those based on section 16.069 of the Civil Practice and Remedies Code, which requires counterclaims to be filed within 30 days of the date the answer is due, and (2) those based on the running of the two-year statute of limitations for DTPA claims. Tex. Bus. & Com.Code Ann. § 17.565; Tex. Civ. Prac. & Rem.Code Ann. § 16.069.[8]

### A. Section 16.069

 In the prior appeal, the First Court of Appeals addressed Holloway's argument pertaining to section 16.069, holding that the DTPA counterclaims related back to the first filed counterclaim and thus were not time—barred under that section. *Wohlfahrt,* 2001 WL 84212, at *4 (citing Tex. Civ. Prac. & Rem.Code Ann. § 16.068 (Vernon 1997)). Holloway contends that the First Court was "simply

---

7. Whether this was due to the alleged, but not found, bartering arrangement, the social relationship between the parties, or some other motive of Holloway is not clear or necessary to establish in order to defeat the quantum meruit claim.

8. Holloway additionally contends that the Wohlfahrts waived any argument regarding the trial court's time-bar finding by not expressly attacking the trial court's grant of his motion for judgment notwithstanding the verdict either in the trial court or on appeal.

Although Holloway may be correct that the Wohlfahrts did not attack the grant of his motion by specifically identifying the motion, he is incorrect in suggesting the Wohlfahrts have not attacked the trial court's action. The Wohlfahrts asserted with specificity both in the trial court and on appeal that the trial court erred in disregarding the jury's DTPA liability findings on the basis that they were time-barred. Accordingly, they have not waived these arguments. *See* Tex.R.App. P. 33.1(a), 38.1(h).

wrong" in holding that the counterclaims were not time-barred. However, under the law of the case doctrine, we are bound to follow the prior ruling unless there was a change of issues or facts in the re-trial. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986).[9] Holloway offers no argument regarding changed issues or facts between the first and second trials in regard to the application of section 16.069, and our review of the record reveals no such changes. Thus, the First Court's prior ruling that section 16.069 does not bar the Wohlfahrts' DTPA counterclaims still stands.

### B. Statute of Limitations

Also in the prior appeal, after finding section 16.069 did not bar the counterclaims, the First Court considered whether the DTPA statute of limitations barred the claims. Tex. Bus. & Com.Code Ann. § 17.565 (providing two-year limitations period for DTPA claims); *Wohlfahrt,* 2001 WL 84212, at *4. Considering the issue in a pre-trial context, the First Court held that limitations did not bar the claims. *Wohlfahrt,* 2001 WL 84212, at *4. The court based this decision in part on the fact that Holloway had not provided any evidence to show when the Wohlfahrts discovered their cause of action. *See id.* at

*3–4. The First Court's opinion, however, did not prevent the parties from offering evidence regarding limitations on remand.

Holloway initially argues that in the live pleadings for the retrial the Wohlfahrts failed to plead the discovery rule as a defense to his limitations pleading. Holloway is simply incorrect. Although, as Holloway points out, the Wohlfahrts did not include the discovery rule in their live answer for the retrial, the Wohlfahrts did plead the discovery rule in their live counterclaim pleading. *See Wohlfahrt,* 2001 WL 84212, at *4 (holding that the Wohlfahrts pleaded the discovery rule). Since Holloway raised his limitations defense in regard to the counterclaims, the most logical place for the Wohlfahrts to raise the discovery rule would have been in their pleadings concerning the counterclaims. They did so; consequently, Holloway's arguments to the contrary are without merit.[10]

 In the re-trial, the DTPA counterclaims were submitted as questions to the jury. Holloway contended in the trial court, and contends in the present appeal, that the Wohlfahrts waived their discovery rule defense because they failed to prove and secure jury findings on it, citing *Woods v. William M. Mercer, Inc.,*

---

**9.** Under the law of the case doctrine, a court considering a subsequent appeal is ordinarily bound by a prior decision in the case. *See Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex.2003). This is true unless there is a substantial change of issues or fact in the re-trial. *Hudson,* 711 S.W.2d at 630. The court in *Briscoe* identified another exception to the doctrine: when the appellate court determines that its first decision was clearly wrong. 102 S.W.3d at 716–17. However, the court's explanation of this exception specifically contemplates that the second appeal is to the same court. *Id.* Although a court can always reconsider its own prior holdings, *see id.,* one intermediate court of appeals is not authorized to overrule the holdings of another

intermediate court of appeals. *Long v. State,* 820 S.W.2d 888, 890 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd); *see also Thomas v. Collins,* 860 S.W.2d 500, 502 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (adopting prior holding by sister court without reanalyzing issue). The proper venue for complaining that a court of appeals ruled erroneously is by motion for rehearing to that court or by petition for review or mandamus to the Texas Supreme Court.

**10.** Indeed, there appear to be no significant changes regarding the discovery rule between the live pleadings in the first trial and the live pleadings in the second trial.

769 S.W.2d 515 (Tex.1988). However, as the supreme court pointed out in *Woods*, the burden to prove and secure findings on the discovery rule arises only once the accrual of a cause of action has been established and limitations has been shown to have run. 769 S.W.2d at 517–18; *see also Tex. Am. Corp. v. Woodbridge Joint Venture*, 809 S.W.2d 299, 303 (Tex.App.-Fort Worth 1991, writ denied); *Wingate v. Acree*, No. 14–01–00851–CV, 2003 WL 1922569, at *2 (Tex.App.-Houston [14th Dist.] April 24, 2003, no pet.) (mem.op.). In other words, "[t]he defendant ... bears the initial burden to plead, prove, and secure findings to sustain its plea of limitations." *Woods*, 769 S.W.2d at 517.[11] Here, Holloway did not request or obtain a jury finding regarding the accrual of the cause of action or the running of the statute of limitations; he also made no argument in the trial court or in his appellate brief that he had established either issue as a matter of law.[12] Thus, the Wohlfahrts were never required to request an issue or present evidence regarding the discovery rule; the burden of production never shifted to them because Holloway never met his initial burden. *Id.* at 517–18. Accordingly, the Wohlfahrts' alleged failure to offer proof and obtain jury findings regarding the discovery rule is of no consequence.

Because we find that the trial court erred in granting a jnov on the DTPA counterclaims on the basis of the claims being time-barred, we sustain the Wohlfahrts' second issue and reverse and remand for consideration of Holloways additional arguments regarding the counterclaims.

## V. Interest

▇▇▇▇ The Wohlfahrts lastly contend that the trial court erred in its calculation of post-judgment interest on the debt award to Holloway. Specifically, on appeal, the Wohlfahrts contend that under changes passed in 2003, section 304.003 of the Texas Finance Code required the trial court to set post-judgment interest at 5%, not the 10% set by the trial court in its judgment. TEX. FIN.CODE ANN. § 304.003 (Vernon Supp.2004). However, in the trial court, the only argument the Wohlfahrts raised regarding post-judgment interest was that under section 304.103, it should have been set at 6%, the same rate that the court used for prejudgment interest in the judgment. *Id.* § 304.103.[13] To have preserved error, a party's argument on appeal must comport with its argument in

---

**11.** In *Woods*, the defendant met its burden by establishing that the plaintiff's cause of action was barred as a matter of law; however, the plaintiff then failed in his subsequent burden to plead, prove, and secure findings on the discovery rule. 769 S.W.2d at 517–18.

**12.** The only argument Holloway made in the trial court was that because the Wohlfahrts' pleadings acknowledged that all legal matters he handled for them were closed by 1992, the counterclaim filed in 1995 was beyond the two-year limitations period. However, the First Court clearly held that the 1995 DTPA counterclaim related back to the original counterclaims filed in 1993; thus, the DTPA counterclaims were not barred by limitations based on the Wohlfahrts' pleadings alone.

*Wohlfahrt*, 2001 WL 84212, at *4 (citing *Barraza v. Koliba*, 933 S.W.2d 164, 167–68 (Tex. App.-San Antonio 1996, writ denied) (holding that counterclaim amended to include DTPA claim related back to timely filed counterclaim because it arose from the same transaction)). Because nothing has changed in regard to this issue between the first and second appeals, we are bound by the First Court's prior ruling as the law of the case. *See Briscoe*, 102 S.W.3d at 716; *Hudson*, 711 S.W.2d at 630; *supra* n. 10.

**13.** Section 304.103 states in its entirety: "The prejudgment interest rate is equal to the post-judgment interest rate applicable at the time of judgment." TEX. FIN.CODE ANN. § 304.103.

the trial court. *E.g., Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613, 621 & n. 21 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). The Wohlfahrts' objection in the trial court did not apprise the court of the alleged error that the Wohlfahrts now complain about on appeal. *See* Tex.R.App. P. 33.1. Accordingly, we find that the Wohlfahrts waived their objection to the court's calculation of post-judgment interest by not making it in the trial court. *See Hachar v. Hachar*, 153 S.W.3d 138, 145 (Tex.App.-San Antonio 2004, no pet. h.) (holding that party waived argument regarding post-judgment interest rate by not making it in the trial court); *El Paso Dev. Co. v. Berryman*, 769 S.W.2d 584, 592 (Tex.App.-Corpus Christi 1989, writ denied) (holding that party waived argument regarding compounding of post-judgment interest by not making it in the trial court). The Wohlfahrts' third issue is overruled.

## VI. Holloway's Appeal: Taxation of Costs

We turn now to Holloway's appeal pertaining to taxation of costs in the earlier appeal to the First Court of Appeals. As mentioned, Holloway won in the first trial in this case, but the First Court reversed that judgment and assessed costs against Holloway. Of the four court reporters who prepared portions of the record for the appeal, only two filed cost certificates; thus, the First Court's mandate indicated that the costs for the other two reporters was "unknown." The First Court then ordered the trial court to determine and assess the costs for those two reporters.[14] The trial court heard evidence regarding costs in two hearings. The trial court then ordered that the First Court's mandate be reformed to include as costs the amounts claimed by the remaining two reporters.

In his appeal, Holloway primarily contends that upon receiving the mandate the trial court should have determined and assessed the *reasonable and necessary* costs and not simply the *actual* costs assessed by the reporters and paid by the Wohlfahrts. Holloway argues both that the court reporter's fees are unreasonable and that portions of the record brought on appeal were not necessary for the appeal. In response, the Wohlfahrts filed a motion to dismiss and an appellees' brief asserting, respectively, that the Fourteenth Court of Appeals does not have jurisdiction over the taxation issues from the first appeal and that the trial court was not authorized to consider the reasonableness and necessity of the costs. We agree with the former contention and hold that we are without jurisdiction to consider Holloway's appeal.

We begin by noting that this area of law is somewhat murky. The Texas Supreme Court has held that a request to "retax" costs must be made in the court in which the costs were incurred. *E.g., Reaugh v. McCollom Exploration Co.*, 167 S.W.2d 727, 727–28, 140 Tex. 322, 324–25 (1943) (dismissing complaint regarding taxation of costs for want of jurisdiction); *Southland Life Ins. Co. v. Statler*, 170 S.W.2d 714, 715, 141 Tex. 110, 112 (1943) (orig.proceeding); *see also Pitts v. Dallas County Bail Bond Bd.*, 23 S.W.3d 407, 417 (Tex.App.-Amarillo 2000, pet. denied) ("Correction of errors in specific items of costs is sought by a motion to retax costs."); *Lopez v. Cent. Plains Reg'l Hosp.*, 859 S.W.2d 600, 607 (Tex.App.-Amarillo 1993, no writ) (considering taxation of costs issue raised as cross-point).

14. The First Court specifically ordered the trial court "to hold a hearing to determine the costs of the items designated as 'Unknown' [in the First Court's mandate] and to then assess costs as set forth in the judgment and mandate of this Court."

The supreme court further held that the cost of a reporter's record for use in perfecting an appeal to a court of appeals is cost accruing in that court of appeals. *E.g., Reaugh,* 167 S.W.2d at 727, 140 Tex. at 324; *Southland Life Ins.,* 170 S.W.2d at 715, 141 Tex. at 112.

However, in *City of Ingleside v. Stewart,* 554 S.W.2d 939, 948 (Tex.App.-Corpus Christi 1977, writ ref'd n.r.e.), the Corpus Christi Court of Appeals suggested that statutory changes have rendered the holdings in *Reaugh* and *Southland Life* no longer valid. Specifically, the Corpus Christi Court held that, because section 52.047 of the Government Code (formerly article 2324 of the Texas Revised Civil Statutes) states that a district court is to determine the reasonableness of a reporter's fee when objected to, a motion to retax is no longer permissible in a court of appeals. TEX. GOV'T CODE ANN. § 52.047 (Vernon 1998); *Stewart,* 554 S.W.2d at 948. Even if the Corpus Christi Court is correct in regard to the reasonableness of the fee charged, a matter we need not decide at this juncture, the court of appeals still appears to be the correct venue for arguments regarding the necessity of portions of the appellate record. *See Lopez,* 859 S.W.2d at 607 (addressing cost issue raised in cross-point); *Planet Plows, Inc. v. Evans,* 600 S.W.2d 874, 877 (Tex.Civ.App.-Amarillo 1980, no writ) (addressing cost issue raised in motion for rehearing and motion to retax costs); *Perkins Constr. Co. v. Ten–Fifteen Corp.,* 545 S.W.2d 494, 501–02 (Tex.Civ.App.-San Antonio 1976, no writ) (addressing cost issue raised by appellant).

 Notwithstanding the unsettled nature of this area of law, the proceedings about which Holloway complains were part and parcel of the first appeal in this case; they played no role in the second trial or in the second appeal brought by the Wohlfahrts. Holloway's appeal is not from a motion to retax costs filed in the trial court. *See Holloway v. Butler,* 828 S.W.2d 810, 811 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (considering appeal from district court's denial of motion to retax); *see also Price v. State,* 856 S.W.2d 226, 227 (Tex.App.-Fort Worth 1993, writ ref'd) (noting that appeal was from judgment and not from the overruling of the motion to retax). The record does not reflect that any such motion was filed in the trial court. The trial court held hearings and made its rulings strictly pursuant to the First Court's specific directive regarding costs. The trial court then assessed costs pursuant to the First Court's order. If Holloway wished to assert error in the First Court's order, he could have filed a motion for rehearing in the First Court or a petition for review or for writ of mandamus in the Texas Supreme Court. *See* TEX.R.APP. P. 49.1 (permitting motions for rehearing in courts of appeals); 52.1–52.11 (governing original proceedings in Texas Supreme Court); 53.1–56.5 (governing petitions for review to the Texas Supreme Court). Holloway cites no authority, and we are aware of none, that permits a wholly new appeal to be taken from such a procedure (whether the appeal is assigned to the First Court or the Fourteenth). Accordingly, we grant the Wohlfahrts' motion and dismiss Holloway's appeal for want of jurisdiction.[15]

## VII. Conclusion

Based on the foregoing, we reverse and render the portions of the trial court's

---

15. The Wohlfahrts filed a motion to strike certain items from the appendix attached to Holloway's reply brief. This motion was also taken with the case. Because we hold that we do not have jurisdiction to consider Holloway's appeal, we overrule this motion as moot.

judgments awarding Holloway recovery on his quantum meruit cause of action, we reverse and remand the portions holding that the Wohlfahrts' DTPA causes of action were time-barred, and we affirm the portions awarding Holloway recovery on his debt claims. We dismiss Holloway's appeal regarding the taxation of appellate costs for want of jurisdiction.